### State of Vermont v. Robert E. Lapham

[377 A.2d 249]

No. 132-76

Present: **Barney, C.J., Larrow, Billings, and Hill, JJ., and Shangraw, C.J. (Ret.), Specially Assigned**

Opinion Filed June 7, 1977

M. *Jerome Diamond*, Attorney General, and *William T. Keefe*, Assistant Attorney General, Montpelier, and *John S. Liccardi*, Rutland County State's Attorney, Rutland, for Plaintiff.

*Robert E. Broderick, Theodore A. Parisi, Jr.*, and *John D. Burke*, Castleton, for Defendant.

**Billings, J.** This is an appeal from a judgment of guilty entered in the Rutland Superior Court after a jury trial for first-degree murder. 13 V.S.A. § 2301; V.R.A.P. 3(b). On March 30, 1975, the Vermont State Police received telephone calls reporting a possible murder at a Mendon residence; officers were dispatched to the scene. When they attempted to enter the house, the defendant opened the door and they were able to see the victim. Conversation ensued between the defendant and the officers. While being transported from the scene, the defendant showed physical signs of illness and was taken to Rutland City Hospital where he suffered a cardiac arrest and was treated for shock and coma resulting from a drug overdose.

An information charging the defendant with first-degree murder was filed in the District Court of Vermont, Unit No. 1, Rutland Circuit on March 31, 1975. He was arraigned at the hospital on April 2nd before a district judge, at which time he entered a plea of innocent. The state's attorney requested the court to "make an entry of not guilty by reason of insanity" and to order him committed to the Vermont State Hospital at Waterbury for observation and a report on his competency and sanity; the order was granted.

On June 12, 1975, an information was filed in the Rutland Superior Court charging the defendant with first-degree murder. The district court information was withdrawn on June 16, 1975. A grand jury was subsequently convened and a true

bill was returned on June 30, 1975. On July 3, 1975, upon request of the state's attorney, the District Court of Vermont, Unit No. 1, Rutland Circuit ordered an inquest on the matter which was held later that month. Subsequently, various motions were made relating to jurisdiction and evidence, and the matter came to trial. Denial of those motions and motions relating to jury instructions is the subject of this appeal.

The defendant's first claim of error is that a district court lacks subject matter jurisdiction over a first-degree murder charge; hence, the arraignment, plea, commitment and inquest before a district judge were void and of no effect so that any evidence derived from them was inadmissible and should have been suppressed from use at trial. He argues that first-degree murder is a felony for which the punishment is life imprisonment (13 V.S.A. § 2303) and that the superior court has exclusive jurisdiction of felonies for which the punishment is life imprisonment (4 V.S.A. § 114) because the district court's jurisdiction is limited to felonies for which the maximum punishment is imprisonment for less than life. 4 V.S.A. § 439.

■ Vermont Rule of Criminal Procedure 4 sets forth the procedures for application to a "judicial officer" for a summons or arrest warrant upon indictment or information. (V.R.Cr.P. 54(c)(4) defines a judicial officer.) The overall intent of this rule and companion rules is that *any* available judicial officer is capable of testing the application of a prosecutor and receiving a plea, premised upon the "neutral and detached magistrate" concept elaborated in *Johnson* v. *United States*, 333 U.S. 10, 14, 68 S.Ct. 367, 92 L.Ed. 436 (1948).

The statutory language setting forth the district court's jurisdiction does not support the defendant's contention concerning arraignment and appearance. The limitations are with respect to "try, render judgment and pass sentence." 4 V.S.A. § 439. Nor did those actions run afoul of 13 V.S.A. § 7001 which provides that, "A person shall not be punished for an offense unless he is *convicted* thereof in a court having jurisdiction of the cause and the person." (emphasis added). Likewise, no support for this contention is found in 13 V.S.A. § 5131 which permits inquests or 13 V.S.A. § 4814 which permits psychiatric examination.

The defendant-appellant has not shown prejudice arising from these procedures held before a district judge, nor has he shown any other basis for reversible error.

The defendant's second claim of error is that at the second arraignment, held on April 2, 1975, at the Rutland City Hospital, a plea of not guilty by reason of insanity was entered at the request of the state's attorney and against the defendant's wishes. He claims that the plea led to his illegal commitment from which evidence was derived which was subsequently introduced at trial to his detriment.

■ It is clear that the plea of not guilty by reason of insanity is abolished. V.R.Cr.P. 11(a), 12(a). Insanity as a defense is usually raised in the omnibus hearing. V.R.Cr.P. 12(f)(2)(H); see V.R.Cr.P. 12.1.

The transcript of the arraignment shows that the state's attorney requested the judge to "make an entry of not guilty by reason of insanity." It is unclear whether the judge accepted and entered that plea. Standing alone, acceptance of such a plea is error, but not reversible error. The crucial issue is the results which flow from a disposition based on that plea. This is the defendant's third claim of error.

■ The defendant objects to the State gleaning any information from the psychiatric review during commitment, terming it improper discovery. V.R.Cr.P. 16.1. The State could and did request examination to determine competency to stand trial. 13 V.S.A. § 4814. Its request to concurrently examine the defendant to determine insanity at the time of the alleged offense was improper. However, the record shows that arrangements were made to have the defendant first examined at Rutland City Hospital by a psychiatrist of his own choosing, and his counsel then waived objection to the subsequent Waterbury psychiatric review in this exchange with the district judge.

Judge: And after he has finished his examination, then you have no objection to the granting of the state's motion to have him examined at Waterbury?

Counsel: We do not, your honor.

Of course, this agreement did not waive any protection granted by 13 V.S.A. § 4816(c) which limits the use of incriminating statements made during the court-ordered psychiatric review.

The fourth claim of error is that the statutory inquest procedures were abused when the State held an inquest subsequent to the return of a true bill. It is asserted that original constitutional rights to confrontation and cross-examination were violated because neither the accused nor his counsel were allowed to attend the inquest.

■■ It is the position of the appellant that he or his counsel had a right to be present and to cross-examine witnesses at all stages where their absence might frustrate the fairness of a proceeding, stages after which an investigation has "focused" on a particular defendant. *Faretta* v. *California*, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975); *Gerstein* v. *Pugh*, 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975). The procedures for inquests in criminal matters are set forth at 13 V.S.A. § 5131 et seq. They are investigations into criminal matters to determine the existence of probable cause, and thus the statutes are strictly construed. *State* v. *Alexander*, 130 Vt. 54, 60, 286 A.2d 262 (1971). An inquest is at most a discovery procedure. *Id.* at 61.

■ The Rules of Criminal Procedure were effective October 1, 1973. V.R.Cr.P. 59. V.R.Cr.P. 15, among other things, provides that after the filing of an information or indictment, the State may take depositions of witnesses, either as a matter of right within thirty days of arraignment or by leave of court at a later day. V.R.Cr.P. 15(a). The rule outlines the right of the defendant to be present and to conduct cross-examination. V.R.Cr.P. 15(b). These rules were promulgated by force of legislation, providing that after the effective date, "all laws in conflict therewith shall be of no further force and effect." See Reporter's Notes, V.R.Cr.P. 1. The requirements of the rules have statutory force, and insofar as the use of inquest material obtained after indictment or information is in conflict with them, it is repealed. Any other result would be completely inconsistent with the policy of reciprocal disclosure outlined in the rules. V.R.Cr.P. 16.1, 16.2. Compare with Reporter's Notes, V.R.Cr.P. 16. In view of our holding that it is error to use materials obtained by inquest ordered after a true bill is

returned or an information filed against the defendant, we do not reach the constitutional issues.

While not controlling in the case at bar, the action of the State below in producing for the defendant the minutes of the inquest is certainly an implicit recognition of this principle. Although contrary to the statutory provision of secrecy, 13 V.S.A. § 5134, it is in accord with the requirement of the rule. V.R.Cr.P. 16(a)(2)(B).

The fifth claim of error is that the trial judge improperly denied a motion to dismiss for lack of a prima facie case because he did not review the transcript of the grand jury proceeding to test the assertions of the defendant that the minutes were altered, that the State could not account for their custody, and that they were not authenticated.

The State elected to rely upon the grand jury minutes as sworn testimony to meet its burden of prima facie evidence in response to the motion to dismiss. The original copy of the transcript of the grand jury minutes was produced at the court hearing by the assistant attorney general. He represented to the court that he had received them by mail from the stenographic reporter and, finding no index, merely had written five entries on the caption page indicating the page at which certain witnesses' testimony began.

Our review of the typed original transcript revealed no alterations but did discover the five index references written in pen on the caption page and one ink check mark in the margin of another page. The stenographic reporter's certificate was found as the last page of the volume.

The original of the transcript of the grand jury minutes is the property of the State and is to be guarded by its officers. V.R.Cr.P. 6(d). The confusion about the custody of the transcript original, whether because of forgetfulness of its custodians or their carelessness is regrettable and distressing. The State has the obligation to maintain the minutes in their original form and to guard them from unauthorized scrutiny to preserve the historical secrecy of grand jury proceedings. In these circumstances, the additions to the caption page are all the more unfortunate because the typed original is so obviously the original version, and these unnecessary reference notes cast suspicion over the entire transcript.

We cannot say, however, that these marks constituted alteration as a matter of law, or that the trial judge's refusal to

peruse the transcript page by page in search of other possible alterations in this situation was an abuse of discretion prejudicial to the defendant.

The sixth claim of error is that statements made by the defendant to police officers at the scene and to others by telephone before the arrival of police should have been suppressed because they were not voluntary due to the influence of a drug overdose at the time they were made. The defendant argues that the statements, under the facts of this case, as a matter of law could not have been voluntary and that the trial court failed to make its findings about voluntariness clear on the record in accordance with the requirements set forth in *Jackson* v. *Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964) and *Sims* v. *Georgia*, 385 U.S. 538, 87 S.Ct. 639, 17 L.Ed.2d 593 (1967) so that an appellate court could test the findings.

The State replies that the influence of drugs upon an admission is merely a factor which could be considered concerning admissibility, and, in the absence of a showing that they were made under circumstances rendering them inadmissible as a matter of law, the question of voluntariness, *i.e.*, whether they were the product of a rational mind or the utterances of a drug-stupified individual, was a jury question.

■■ A criminal defendant is denied due process of law if his conviction is founded in whole or in part upon an involuntary confession regardless of its truth or falsity, and regardless of whether there is other evidence sufficient by itself to support a conviction. *Jackson* v. *Denno, supra,* 378 U.S. at 376 (see cases cited therein). A defendant has a constitutional right to "a fair hearing in which both the underlying factual issues and the voluntariness of his confession are actually and reliably determined." *Id.* at 380. *State* v. *Rocheleau,* 131 Vt. 563, 573, 313 A.2d 33 (1973). "Although the judge need not make formal findings of fact or write an opinion, his conclusion that the confession is voluntary must appear from the record with unmistakable clarity." *Sims* v. *Georgia, supra,* 385 U.S. at 544.

No *Miranda* question is raised in this case because the parties agree that the statements were not the products of interrogation. Our review of the record discovered no statement of the trial judge on the question of voluntariness except to deny

the motion to suppress. While the State contends that admission of the evidence after consideration of written and oral argument implies a finding of voluntariness, *State* v. *Goyet*, 120 Vt. 12, 132 A.2d 623 (1957), this is not sufficient. Upon remand, the question of voluntariness should be determined in a new hearing conforming to the requirements outlined above. V.R.Cr.P. 12(d).

The seventh claim of error is that opinion testimony by police officers as to the sanity of the defendant when they observed him at the crime scene was prejudicial and was a deprivation of due process. The defendant contends that lay witnesses, even though trained observers, should not be allowed to testify to the ultimate issue of sanity, particularly if they do not have a prolonged and intimate relationship with the accused sufficient to justify the opinion by comparing past behavior with present conduct.

The State replies by citing *State* v. *Bishop*, 128 Vt. 221, 260 A.2d 393 (1969) as controlling and implies that these lay witnesses had sufficient contact with the defendant to form an intelligent opinion as to his sanity as long as their testimony was preceded or accompanied by a statement of their observations. In *Bishop* opinion testimony was apparently given by lay witnesses who had varying and possibly no prior relationship with the defendant.

The admissibility of opinion evidence has been an issue of discussion among legal scholars throughout the years. McCormick on Evidence, Chap. 3 (2d ed. 1972). We are convinced that there are dangers inherent in this type of testimony relating to insanity. In his concurring opinion in *Bishop*, Chief Justice Holden cites an example in which the uninformed opinions of lay witnesses on the issue of sanity might exclude reasonable doubt in the presence of competent expert evidence to the contrary. *Id.* at 232.

We agree that lay witnesses may relate their personal observations of individuals whose mental condition is in question. Further, we agree that non-expert opinions are permissible,

> when based upon conversations or dealings which he has had with such person, or upon his appearance, or upon any fact bearing upon his mental condition, with the witness' own knowledge and observation, he having first testified to

such conversations, dealings, appearance or other observed facts, as the basis for his opinion. [*Id.* at 228. (citations omitted).]

However, we also believe that a non-expert opinion about sanity from a witness who has no comparative basis with past conduct adds nothing to the deliberative process of a jury which it could otherwise inferentially draw from a simple recounting of that witness's observations. We therefore hold that there must be some prior acquaintanceship or contacts between the lay witness and the defendant which forms a reasonable basis to justify the opinion sought to be introduced concerning insanity.

The eighth claim of error is the failure to sustain an objection to the admissibility of the defendant's expert medical witnesses' recounting of the defendant's statements made in the course of their examination of him. He argues that 13 V.S.A. § 4816 and decisional law limit disclosure of any incriminating information revealed in a professional medical capacity upon the theory that proper diagnosis and treatment of the patient requires full disclosure by the patient to the physician. He contends that the statements admitted into evidence were the only direct evidence of premeditation and malice produced by the State, and their admission in light of his election not to testify was clearly prejudicial and violated his Fifth Amendment right to remain silent.

In reply, the State urges that a privilege against disclosure does not apply when the expert help is not sought for medical reasons of diagnosis and treatment but rather for examination to pass on the mental and physical condition of one charged with a crime. *Ramer* v. *United States*, 411 F.2d 30, 39-40 (9th Cir.), *cert. denied*, 396 U.S. 965 (1969).

The statutory prohibition reads:

No statement made in the course of the examination by the person examined, whether or not he has consented to the examination, shall be admitted as evidence in any criminal proceeding for the purpose of proving the commission of a criminal offense.... [13 V.S.A. § 4816(c).]

This portion of the statute must be read in conjunction with other associated statutory sections in Chapter 157 of Title 13. Read as a whole, it is clear that the prohibition is directed at

court-appointed psychiatric examinations. Its theoretical premise is the Fifth Amendment right against self-incrimination. *State* v. *Miner*, 128 Vt. 55, 69-70, 258 A.2d 815 (1969).

The State cites additional opinions from other jurisdictions which it claims support its position. *United States ex rel. Edney* v. *Smith*, 425 F.Supp. 1038 (E.D.N.Y. 1976); *State* v. *Jensen*, 286 Minn. 65, 174 N.W.2d 226 (1970); *State* v. *Fouquette*, 67 Nev. 505, 221 P.2d 404 (1950); *Catoe* v. *United States*, 131 F.2d 16 (D.C. Cir. 1942). Notwithstanding these opinions, we believe that the patient privilege law, enacted effective July 1, 1974, should apply. 12 V.S.A. § 1612. (Our holding in *State* v. *Oakes*, 129 Vt. 241, 256-57, 276 A.2d 18 (1971) that the physician-patient privilege does not apply is limited to that factual situation of court-ordered examinations.) See also 13 V.S.A. § 4816(c). Although not constitutionally compelled, we are convinced that the constitutional premise also lends support here. A defendant who raises an insanity defense is entitled to present an expert, professional evaluation as part of his case. This statutorily defined defense, 13 V.S.A. § 4801, is meaningless if the psychiatric evaluation cannot be performed in an atmosphere of candor so that the physician can form an objective and independent judgment on the issue of insanity.

The State also argues that the introduction of an insanity defense constitutes waiver of any physician-patient privilege because the issue as to which the physician has knowledge is placed in question by the party relying on the privilege. The defendant replies, in part, that since the State may introduce non-incriminating statements to bolster psychiatric testimony, it follows that the defendant may present similar evidence without permitting a divulgence of privileged information to the State on cross-examination. Our analysis above also addresses this contention by the State.

The State's argument also distinguishes between examination for reasons of on-going diagnosis and treatment and examinations for purposes of testimony alone. Apparently this approach would permit a factual distinction among cases, *i.e.*, if the criminal defendant could establish a pre-existing on-going medical relationship or indeed an intent to continue a medical relationship, the defendant would benefit by an exclusionary rule. *United States ex rel. Edney* v. *Smith, supra*, 425 F.Supp. at 1044. Whatever validity this argument may

have in general, 12 V.S.A. § 1612 speaks to "information ... acquired in attending a patient in a professional capacity, and which was necessary to enable him to act in that capacity." Examination as a basis of testimony is as much "in a professional capacity" as examination for treatment; this distinction cannot contravene the plain wording of the statute.

The evidence sought to be elicted by the State from Dr. Brown went to the issues of malice and premeditation.[1] These are essential elements required to prove first-degree murder. Thus the testimony was objectionable in that it tended to prove commission of the offense charged and its admission was error. We note, however, that statements by a defendant to a psychiatrist which are not prohibited by 13 V.S.A. § 4816(c) or by 12 V.S.A. § 1612 are admissible to establish a basis for the psychiatrist's evaluation of sanity at the time of the offense. *State* v. *Oakes, supra,* 129 Vt. at 257.

■ The ninth claim of error is in two parts: first, the trial court improperly excluded the testimony of prospective defense witnesses as to the defendant's state of mind; and secondly, compounded this error by charging the jury that they could

-----

[1](State:) "Q: Did he tell you that she got nasty?
(Dr. Brown:) A: Yes, sir.
Q: And he told you that he became disgusted with her did he not?
A: Yes, sir.
Q: And he said his wife became irrational?
A: Correct.
Q: Did he refer to her as a stupid ass?"

(exchange between counsel and the court)

"A: 'The stupid ass got me so dejected.'
Q: Now, Dr. on that same occasion, your visit of 4/18/75, when you talked about the killing, and on the occasions of which he had hit her in the past, is that not true?
A: Yes.
Q: And he laughed about it when he talked about it, didn't he?
A: Yes. Laughed inappropriately.
Q: But he laughed didn't he?
A: Yes."

consider evidence of the defendant's state of mind when evidence of this type as offered by the defense was excluded but similar evidence by the State was admitted. He argues that his two prospective witnesses had prior knowledge of his demeanor, character, state of mind and relationship with the deceased and thus could have illuminated the issues of malice, premeditation, and insanity by offering a basis upon which the jury could infer whether the acts charged were aberrant, irrational or unlikely. He claims that the respondent's character as indicating the probability of doing a criminal act was relevant and probative, and further, the court's charge in light of its refusal to permit this defense testimony or accept an offer of proof while admitting similar prosecution testimony was manifestly prejudicial.

The State replies that the proposed evidence as indicated by the offer of proof was both immaterial and cumulative, and the court was limited to considering the offer in the scope it was then described and did not abuse its discretion, citing as the general rule that evidence of character in any form generally is not received to prove conduct on a particular occasion.

Our review of the transcript shows that the first rejected offer of proof was that a friend of the deceased would testify as to her conversations with and impressions of the deceased vis a vis the relationship between the deceased and the defendant, *e.g.*, whether malice had been displayed previously or whether there was any suggestion of premeditation for a violent act. The second offer was that a social and business acquaintance would testify as to the marital relationship of the couple over a number of years. The sum of the prospective testimony was to show the cordiality, affection and love in the relationship from which an inference might be drawn that an absence of prior hostility showed lack of malice or premeditation and was relevant to sanity when contrasted with the strange aggravation of the act committed.

We believe that this evidence was material and should have been admitted in rebuttal of previously admitted similar evidence stating a contrary nature of the relationship. In light of this conclusion, we need not reach the question of the jury instruction.

The last claim of error is that the comments made by the assistant attorney general during closing argument to the

jury were improper[2] and the court should have specially admonished the jury to disregard the statements.

In every trial, civil or criminal, counsel have an obligation as officers of the court to conduct themselves in a manner which will insure justice through a fair and impartial trial. This is a professional responsibility to insure and protect the rights of the parties and to secure the prompt administration of justice unnecessarily delayed by a retrial resulting from reversible error related to the conduct of counsel.

We recognize that upon appeal we must review the comments of counsel in the cool light of their written form, in contrast to the heat of an adversary proceeding. We believe that a prosecutor has a duty to present the State's case with earnestness and vigor, using every legitimate means to secure a just conviction, however, there is also a corresponding duty to refrain from improper methods calculated to produce a wrongful conviction and to guard against conduct unintentionally trespassing the bounds of propriety.

 The longstanding rule in Vermont is that counsel should confine argument to the evidence of the case and inferences properly drawn from it, and must avoid appealing to the prejudice of the jury. *Hall* v. *Fletcher*, 100 Vt. 210, 213,

---

[2] "So it is unlikely, considering the massive amount of hard evidence which indicates that this defendant has shot his wife, it seems unlikely that he would ever be able to convince a jury that he didn't do it.

The next best thing is to be able to convince a jury that he was insane and therefore, he is not responsible. A finding, ladies and gentlemen, which would allow him to do as he told Dr. Brown he wished to do, sell his house, sell one of the Mercedes - he doesn't need two, his wife is dead, and go to Arizona."

\* \* \* \*

"Now, he is transferred after a few days to Vermont State Hospital in Waterbury [not] because he needs treatment for mental illness, but because he has made known his intentions to rely on an insanity defense to a serious murder charge.

So, he is being ordered up there by the courts for the purpose of evaluation. Now, by entering this plea, ladies and gentlemen, I suggest to you that he is embarked upon what I refer[red] to earlier in this case as a desperate effort to escape justice."

136 A. 388 (1927). Comments of counsel shall not be inflammatory, nor depart from the evidence, nor represent an injection into the case of the prosecutor's personal belief as to the guilt of the accused. *State* v. *Jackson,* 127 Vt. 237, 246 A.2d 829 (1968). The burden of proving prejudice is on the respondent. *State* v. *Parker,* 104 Vt. 494, 500, 162 A. 696 (1932). Whether an improper argument is of a nature which requires a reversal depends on the attending circumstances, and there is usually little profit in comparing one case with another; prejudice must affirmatively appear. *State* v. *Frotten,* 115 Vt. 146, 147, 53 A.2d 52 (1947). However, certain circumstances may command themselves to aid in this evaluation, *e.g.,* the treatment of the objection or exception and the jury instructions. *State* v. *Gravelle,* 117 Vt. 238, 246, 89 A.2d 111 (1952). Overall, were the rights of the party injuriously affected? *Duchaine* v. *Ray,* 110 Vt. 313, 322, 6 A.2d 28 (1939).

In the case at bar, defense counsel, out of the presence of the jury, made an objection to the prosecutor's argument, stated specifically the reason for the objection, asked to have it noted, and requested an admonishment to the jury on the issue of disposition following a verdict of not guilty by reason of insanity in light of the remarks made in closing argument. The comments were not struck, nor was an admonishment given in the charge.

We emphatically agree that the remarks were improper and prejudicial. Taken in the context of the entire argument, the thrust seems to be that there was a deliberate scheme by the defendant to concoct an insanity defense, "because it seems unlikely that he would ever be able to convince a jury he didn't do it," and if he convinced the jury of this defense, it "would allow him to" sell off property he did not need because of his wife's death and move to Arizona, a plan he had told to his psychiatrist.

The State has characterized this line of argument as merely commenting on the evidence. It is much more; it discloses a studied purpose to arouse the prejudices of the jury by establishing a pattern that raising a legitimate defense of insanity was a mere attempt to escape justice. This was inflammatory and, when coupled with the statement of the prosecutor's opinion about the outcome of the disposition if a not guilty by reason of insanity verdict was rendered, it breached

the bounds of reasonable comment. This is clearly unacceptable conduct.

In *State* v. *Bishop, supra,* remarks were made about the possible future conduct of the defendant, the prosecutor wondering if the act committed could happen again. This Court found that remark improper and prejudicial. In that instance, an admonishment accompanying a general jury instruction that arguments of counsel are not evidence was not error. We have also held that knowledge of a punishment could not aid a jury in determining the issue of whether a defendant was guilty of the offense charged. *State* v. *Goyet, supra,* 120 Vt. at 53. Further, in *Woodmansee* v. *Stoneman,* 133 Vt. 449, 344 A.2d 26 (1975), we held that an argument which was factually incorrect was not cured by a general charge which stated that arguments were not evidence because the general charge was undirected to the particular argument.

Here, the general instruction also was not enough. There was sufficient confusion and prejudice engendered by these remarks to have required at least the special admonishment requested.

In conclusion, the cumulative effect of these errors necessitates reversal and remand for a new trial in conformity with this opinion. *Woodmansee* v. *Stoneman, supra,* 133 Vt. at 456. *State* v. *Ovitt,* 126 Vt. 320, 229 A.2d 237 (1967).

*Reversed and remanded.*

## On Motion for Reargument

**Billings, J.** On the handing down of the opinion, the State moved for leave to reargue. V.R.A.P. 40. By reason of matters brought to our attention relating to inquest procedures and the admissibility of evidence of defendant's psychiatrist, the opinion was recalled and changes were made.

The revision of the opinion does not change the result previously reached, and the entry order is not affected.

*Motion for reargument denied.* See *Nurmi* v. *Employment Security Board,* 124 Vt. 42, 50, 197 A.2d 483 (1963).