### State of Vermont v. Carl Joseph Billado, III

[446 A.2d 778]

No. 331-80

Present: Barney, C.J., Billings, Hill, Underwood and Peck, JJ.

Opinion Filed April 6, 1982

John J. Easton, Jr., Attorney General, Edwin L. Hobson, Jr. and Susan R. Harritt, Assistant Attorneys General, and Jane Hart Marter, Law Clerk (On the Brief), Montpelier, for Plaintiff.

Andrew B. Crane, Defender General, William A. Nelson, Appellate Defender, and Nancy E. Kaufman, Montpelier, for Defendant.

Billings, J. Defendant appeals a conviction after jury trial of armed robbery, 13 V.S.A. § 608(b), in the District Court of Vermont, Unit No. 2, Chittenden Circuit.

The defendant together with three other masked men, two of whom carried sawed-off shotguns, robbed five card players at the Odd Fellows Lodge in Burlington, on July 9, 1979. Subsequent to the robbery the defendant fled Burlington and did not return until March 1980. At trial defendant did not contest his presence at the robbery, but did contest his sanity at the time of the events. He claimed he did not have the capacity to form the specific intent required to commit armed robbery because prior to the robbery he had unknowingly ingested phencyclidine, a drug commonly known as angel dust or PCP.

On appeal the defendant raises five issues. They will be taken up in the order presented.

## I.

The first issue is whether the defendant's right to a fair trial was denied by the cumulative effect of prosecutorial misconduct. Defendant cites four separate instances of alleged misconduct.

## A.

The defendant first claims that the prosecution improperly elicited testimony concerning his drug habit and used it improperly during closing arguments.

The defendant's defense was that he lacked the requisite intent to commit armed robbery because he was temporarily insane due to his ingestion of a controlled drug. The defendant claims he took phencyclidine (PCP) while under the impression it was cocaine. According to the defense theory PCP has different effects than cocaine, which effects the defendant was not anticipating, and which made him incapable of conforming his conduct to the law.

Defendant testified to a history of drug abuse which culminated in the robbery. To buttress his explanation of events and his allegedly innocent reason for fleeing, he further testified that when he first left Burlington after the robbery he "kicked" his drug habit: "I haven't done any drugs since this robbery."

Later in the trial and on direct examination, the defense psychiatrist testified that the defendant was suffering from organic delirium brought on by ingesting PCP the night of the robbery. On cross-examination the psychiatrist admitted that his opinion was based entirely on what the defendant told him. He further admitted, in contradiction to what the defendant testified, that the defendant had told him that during the ten months in which the defendant was hiding from the police he continued to take drugs. The defense did not clarify this apparent contradiction when it recalled the defendant in rebuttal.

In its closing argument the State referred to the inconsistencies between what the defendant told the jury and what he told the defense psychiatrist:

> And Mr. Billado has already proven to you that he can lie, because he lied to Doctor Payson. Remember Doctor Payson's testimony was that it was not his impression that Mr. Billado had kicked the drug habit. You remember that testimony Mr. Billado gave, how he said he was so shook up when he realized what had happened here and that he somehow had been involved in this robbery, and he didn't remember, and all of that, and that he kicked the habit. Ask yourself what a drug user means when he says he kicked the habit. Does it mean kick the habit or does it mean I shot up for a few days and then I went off and then went back on? What impression did he

leave Doctor Payson with after more than three hours of interview? Doctor Payson had some very strong opinions here based on what the defendant told him. Unfortunately, he left out a few details.

At the conclusion of closing arguments defense counsel objected to this line of argument, but he did not move to strike the argument or ask for a curative instruction.

On appeal the defendant claims that it was error for the prosecutor, in cross-examining the defense psychiatrist, to impeach defendant's testimony regarding his post-flight drug use without first affording him an opportunity to explain his alleged inconsistent statements and then to use this improperly admitted impeaching testimony in summation as proof that he was a liar.

We do not agree with this assertion. The defense psychiatrist's testimony was properly admitted. The defendant confuses the rule that a voluntary statement by a party is admissible for any relevant purpose with the rule on impeaching a nonparty witness.

■ A nonparty witness should be given an opportunity to explain a prior inconsistent statement before it is used. *State v. Dragon*, 128 Vt. 568, 570, 268 A.2d 913, 914 (1970). A different rule holds for a party, however, whether or not he is a witness.

■ There is general agreement that the prosecution may introduce in a criminal trial any voluntary and relevant out-of-court statement of the defendant. McCormick on Evidence § 145 (2d ed. 1972). Here there is no question of voluntariness and the statement is clearly relevant. The psychiatrist based his opinion entirely on what the defendant told him. If what the defendant told him was not accurate, then the psychiatrist's opinion loses its reliability. Therefore it was proper for the prosecution to examine the reliability of the defendant's statements to the psychiatrist.

■ As to the prosecution's use of the inconsistent statements in closing argument, this was not error. "It is the general rule that counsel may recount and comment on evidence properly admitted at trial, that he may draw legitimate

inferences from the record, and that he may reflect unfavorably on the defendant so long as the remarks are based on properly admitted evidence." *State* v. *Blakeney*, 137 Vt. 495, 504, 408 A.2d 636, 642 (1979). The State's comments in closing argument were based on evidence which, as we held above, was properly admitted. No prejudice resulted from the State's assertion that the defendant was a liar as that conclusion could properly be drawn from the conflicting testimony. The defendant has failed to meet his burden of showing improper prejudice. *State* v. *Lapham*, 135 Vt. 393, 407, 377 A.2d 249, 257 (1977).

### B.

The second instance of misconduct cited by the defendant is that the prosecutor improperly injected the defendant's character into the proceedings.

In closing arguments the prosecutor characterized the robbery as "professional" and made the comment that "[p]eople like Billado take advantage of the surprise and fear and shock [of their victims]." These comments by the State were not objected to.

It is well established that this Court will not, even in criminal cases, consider questions not raised in the court below unless the error is a glaring error so grave and serious that it strikes at the heart of a defendant's constitutional rights. *State* v. *Kasper*, 137 Vt. 184, 190–91, 404 A.2d 85, 89 (1979). There is no such glaring error here. Also, there was testimony by the victims that the robbery was professional and that they were surprised, afraid, and shocked. Thus, the prosecutor's comments were based on the testimony and were permissible. *State* v. *Blakeney, supra*, 137 Vt. at 504, 408 A.2d at 642.

### C.

The third instance of misconduct cited by the defendant is that the state's attorney improperly elicited testimony from the defense psychiatrist regarding the general practices of defendants who plead insanity and then used this testimony in summation as evidence that this defendant concocted his defense.

██ ██   The prosecutor cross-examined the defense psychiatrist as to whether "people that are charged with crimes sometimes make self-serving statements to examining psychiatrists." The doctor answered in the affirmative. No objection was made by the defense to this line of questioning. Without an objection below, the admission of this evidence cannot be challenged on appeal. *State* v. *Kasper, supra,* 137 Vt. at 204–05, 404 A.2d at 97.

The admission or exclusion of this evidence, however, is not crucial to the remainder of the issue argued by the defendant and which was properly raised below by objection to the closing argument. Essentially the defendant claims that the prosecutor's argument, that the defendant fabricated his insanity defense, is expressly prohibited by *State* v. *Lapham, supra,* 135 Vt. at 407, 377 A.2d at 257. We disagree. The defendant has misconstrued the holding in that case.

There is a significant factual difference between this case and *Lapham.* In *Lapham* there were two essential ingredients which made the prosecutor's comments prejudicial enough to warrant reversal. The prosecutor commented that: (1) the defense of insanity was concocted, and (2) the defendant would go free if the jury found him guilty by reason of insanity. This second comment, which was crucial to the finding of prejudice in *Lapham,* is totally lacking in the present case. Merely arguing that the defendant's insanity defense is fabricated may or may not be inflammatory depending on the facts of the particular case, and even if it is inflammatory it still may not be prejudicial enough to be reversible error. *Id.*

██   Here, the argument was neither inflammatory nor prejudicial. The defendant's defense was that he was in an organic delirium resulting from the mistaken ingestion of PCP. No one saw him take the drug, and the defense psychiatrist's conclusion that he suffered from such a delirium was based entirely on what the defendant told him. In addition, there was evidence that the defendant may not have been completely truthful with the psychiatrist. Thus, the central issue in this case was the defendant's credibility. The only argument the State could make was that the defendant's story was not to be believed, that he was lying or fabricating this defense. In such a case it is not prejudicial to argue fabri-

cation as long as the evidence supports the argument, as it does here.

## D.

The fourth instance of misconduct is that the prosecution's cross-examination of the defense psychiatrist constituted an improper attack on his ability and credentials.

On cross-examination the prosecutor asked the defense psychiatrist whether he remembered testifying in certain other criminal trials. The doctor answered that he could remember testifying but could not remember his exact words. To refresh his recollection the prosecutor read the statements to the witness, who then affirmed that he had made the statements. The statements concerned: the psychiatrist's doubt as to his expertise in criminality; the need, as a general proposition, for a physical and neurological work-up on a patient before conclusive opinions can be drawn, which was not done in this case; and his belief that lay witnesses are much better than expert ones. The defendant objected but was overruled. On appeal the defendant claims: (1) that the prosecutor failed to elicit the psychiatrist's present opinion on each particular point to establish whether there was anything to impeach, citing *State* v. *Young*, 139 Vt. 535, 433 A.2d 254 (1981); and (2) that the prosecutor failed, over objection, to provide the psychiatrist with a copy of the allegedly impeaching statement.

■ We do not need to reach these issues, however, because even if the cross-examination was improper, it was not so prejudicial as to require reversal. *State* v. *Hohman*, 138 Vt. 502, 506, 420 A.2d 852, 855 (1980). The defense had ample opportunity to explain and rebut any potentially prejudicial questions on redirect and in fact did so. Thus, if there was error it was harmless.

## E.

■ Finally, we must now address the defendant's claim that the cumulative effect of these four instances of misconduct denied the defendant his right to a fair trial. This argument is easily dispatched. Because we found that no prejudice resulted from any of the instances of alleged misconduct, there could not have been a cumulative prejudicial effect.

## II.

The second issue on appeal is whether the trial court abused its discretion in permitting the State to cross-examine the defendant as to his flight after the robbery when it knew that the defendant would invoke his privilege against self-incrimination.

On direct examination the defendant admitted that he fled Burlington after the robbery and did not return for ten months. He testified that the first thing he did after leaving was to kick his drug habit. He realized that he was destroying himself and his family and needed help. Therefore, during the time he was away he tried to contact a policeman, the state's attorney, his probation officer, and a family friend to find out where he could get help.

On cross-examination the prosecutor asked the defendant details about what he did during the ten months. The defendant's answers were very evasive. For example, he could not remember the names of any of the people he met or lived with. Finally the prosecutor asked him where he had stayed. Defense counsel objected and at a bench conference argued that the prosecution should not be permitted to ask the defendant questions about his exact whereabouts because he would have to plead the Fifth Amendment. The trial court overruled the objection. The prosecutor then asked the defendant what cities and towns he had been in. He responded: "I don't recall." At that point defense counsel interrupted explaining in the presence of the jury that he had instructed his client to plead the Fifth Amendment to that question because the answer might make him liable to other criminal charges. After this explanation, the prosecutor did not question the defendant further regarding where he went during his ten-month absence.

The defendant argues that being forced to plead the Fifth Amendment in open court was prejudicial because the jury might infer that he may have committed other criminal acts, is therefore criminal by nature, and likely to be guilty of the robbery in the present case. We find that the cross-examination was proper and that even if it were not there was no prejudice to the defendant.

The United States Court of Appeals for the Ninth Circuit summarized the law on this issue nicely:

> In determining whether it is improper for the government to ask a defendant questions which will result in an assertion of the privilege against self-incrimination, the central consideration is whether the defendant has waived his privilege as to the propounded questions. When a witness or a defendant has a valid Fifth Amendment privilege, government questions designed to elicit this privilege present to the jury information that is misleading, irrelevant to the issue of the witness's or the defendant's credibility, and not subject to examination by defense counsel. Therefore, we do not allow this form of questioning.
>
> But when a defendant has voluntarily waived his Fifth Amendment privilege by testifying in his own behalf, the rationale for prohibiting privilege-invoking queries on cross-examination does not apply. The defendant has chosen to make an issue of his credibility; he has elected to take his case to the jury in the most direct fashion. The government, accordingly, has a right to challenge the defendant's story on cross-examination. The government may impeach the defendant by developing inconsistencies in his testimony; the government may also successfully impeach him by asking questions which he refuses to answer. If the refusals could not be put before the jury, the defendant would have the unusual and grossly unfair ability to insulate himself from challenges merely by declining to answer embarrassing questions. He alone could control the presentation of evidence to the jury.

*United States* v. *Hearst*, 563 F.2d 1331, 1341–42 (9th Cir. 1977), *cert. denied*, 435 U.S. 1000 (1978) (citations omitted). Moreover, the United States Supreme Court has stated that when a defendant takes the witness stand "his credibility may be impeached and his testimony assailed like that of any other witness, and the breadth of his waiver is determined by the scope of relevant cross-examination." *Brown* v. *United States*, 356 U.S. 148, 154–55 (1958).

In the present case the trial court did not abuse its broad discretion, *United States* v. *Higginbotham*, 539 F.2d 17, 24 (9th Cir. 1976), in permitting questions concerning the defendant's whereabouts because the defendant had waived his privilege against self-incrimination as to that line of questioning. As we have already stated the crucial issue in this case was the defendant's credibility and veracity. The State's counter-argument as to the defendant's insanity defense was that it was fabricated. The defendant on direct examination placed his ten-month absence at issue by testifying that during that time he was trying to get help. In light of this testimony it was proper to permit the prosecution to inquire in detail about the ten-month absence to challenge the defendant's memory and truthfulness. If the defendant cannot remember basic details about his absence then the credibility of his version of the events is seriously diminished. Once the defendant has recounted the positive details of his absence, the State is permitted to question the defendant on other more damaging details as well. See *United States* v. *Hearst, supra,* 563 F.2d at 1341. Therefore, this line of questioning is within the scope of relevant cross-examination. *Brown* v. *United States, supra,* 356 U.S. at 154–55.

In any event we question whether it was prejudicial to plead the Fifth Amendment in open court in this particular case as the defendant had already testified that he had pleaded guilty to three prior offenses of possession of stolen property. We note that *United States* v. *Jackson,* 405 F. Supp. 938 (E.D.N.Y. 1975), relied on by the defendant, is distinguishable from this case. In *Jackson* although detailed evidence of the defendant's interstate flight was excluded as prejudicial, the defendant's prior convictions had also been suppressed.

### III.

The third issue is whether the trial court's instructions to the jury respecting defendant's flight and intent to commit the crime violated his right to a fair trial.

As neither instruction was objected to below, we may not consider them on appeal unless there was glaring

error. *State* v. *Kasper, supra,* 137 Vt. at 190–91, 404 A.2d at 89. No glaring error appears in this instance.

Giving an instruction on flight is fully consistent with the law in this state. *State* v. *Unwin,* 139 Vt. 186, 193, 424 A.2d 251, 255–56 (1980). Although not perfect, the charge given by the trial court did instruct the jury that flight alone is not proof of guilt in a criminal case, and therefore does not rise to the level of glaring error. See *id.* The defendant's reliance on *State* v. *Brisson,* 119 Vt. 48, 53, 117 A.2d 255, 258 (1955), is misplaced. In that case the trial court neglected to give any instructions at all regarding the defendant's theory of the case. Here extensive instructions were given on the defenses of insanity and diminished capacity.

■■■ These instructions also counter the defendant's claim that the charge on intent, when viewed together with the charge on flight, was error. Overall the charge to the jury was well-balanced and fair.

## IV.

The fourth claim on appeal is that the trial court erred in instructing the jury regarding the role of the state's attorney because it failed to explain the purpose of the charge, thereby improperly bolstering the State's witnesses.

■■■ The defendant did not, however, object to the charge on this ground. To reiterate, this Court will not, even in criminal cases, consider questions not raised in the court below. *State* v. *Kasper, supra,* 137 Vt. at 190, 404 A.2d at 89. The purpose of such a rule "is to require that correctable error be addressed initially in the trial court. Its justification lies in promoting fair trials, 'maximizing correct decisions and concomitantly minimizing errors requiring mistrials and retrials.'" *Id.* (quoting *Henry* v. *Mississippi,* 379 U.S. 443, 463 (1965) (Harlan, J., dissenting)).

■■■ The charge used by the trial court was substantially similar to the charge we disapproved of in *State* v. *Jaramillo,* 140 Vt. 206, 209, 436 A.2d 757, 759 (1981). We reiterate our disapproval of this charge. When properly objected to it may be grounds for reversal.

## V.

The final issue on appeal is whether the State sustained its burden of proof as to sanity. *State* v. *Bishop,* 128 Vt. 221, 227, 260 A.2d 393, 398 (1969), sets forth the law regarding the defense of insanity:

> When evidence appears in a criminal prosecution to indicate the respondent did not possess the requisite mental capacity to make him criminally responsible, it becomes the duty of the prosecution to establish, beyond a reasonable doubt, the respondent's sanity as an essential ingredient of the crime. Insanity is not an affirmative defense. It is a means of meeting the case made by the prosecution and weakening one of its essentials; beyond this it need not go.

A nonexpert may give his opinion as to the sanity or insanity of another as long as it is based on observed fact. *Id.* at 228, 260 A.2d at 398. The jury is the sole judge of the credibility of the witnesses whether they be expert or nonexpert. *Id.* On appeal our evaluation of the sufficiency of the evidence is governed by the following standard: "whether the evidence, when viewed in the light most favorable to the State, is sufficient to convince a reasonable trier of fact that the defendant is guilty beyond a reasonable doubt." *State* v. *Derouchie,* 140 Vt. 437, 445, 440 A.2d 146, 150 (1981).

In this case the State relied on lay witnesses to establish sanity. They testified that the defendant was at the robbery, seemed to be in charge, and conducted himself with self-control. The defendant testified that he had taken drugs and did not have the ability to form the intent necessary to commit armed robbery. His expert testified that in his opinion the defendant was in an organic delirium and did not have sufficient intent. But, he admitted that his opinion was based solely on what the defendant told him. He further testified that if the defendant was in charge he could not have been in an organic delirium. Thus there was sufficient evidence to support either conclusion. It was simply a matter of whom to believe, a classic jury question. We con-

clude that the evidence the State submitted was sufficient to convince a reasonable trier of fact of the defendant's guilt.

*Affirmed.*