## State of Vermont v. Robert Lyle Percy

[507 A.2d 955]

No. 82-011

Present: Allen, C.J., Hill, Gibson and Hayes, JJ., and Daley, J. (Ret.), Specially Assigned

Opinion Filed January 10, 1986

476

*Jeffrey L. Amestoy*, Attorney General, *Susan R. Harritt*, Assistant Attorney General, and *Steve Norten*, Law Clerk (On the Brief), Montpelier, for Plaintiff-Appellee.

*David W. Carpenter* and *Henry Hinton*, Appellate Defenders, Montpelier, for Defendant-Appellant.

**Hill, J.** The defendant, Robert Percy, was convicted after a trial by jury of sexual assault in violation of 13 V.S.A. § 3252. The court, after entertaining defendant's post-trial motions, entered judgment on the verdict. On appeal, defendant claims that the combined error of (1) the prosecutor's improper remarks in closing argument; (2) the trial court's decision to admit certain expert testimony; and (3) the trial court's confusing and misleading jury instructions denied him his right to a fair trial. We reverse.

On the evening of December 7, 1980, the complainant was driving south on Route 12 between Elmore and Worcester. She was driving slowly due to a snow storm and she stopped abruptly when the defendant jumped in front of her car. The defendant entered the complainant's car and forced her to drive to an isolated dead-end road where he sexually assaulted her. The complainant then drove back to Route 12, pursuant to the defendant's instructions, and the defendant left her car.

The defendant, when questioned by police, claimed no recollection of the event. At trial, he relied on an insanity defense, a condition which he attributed to his combat experience in the Vietnam War.

I.

In *State* v. *Billado*, 141 Vt. 175, 183, 446 A.2d 778, 783 (1982), we stated that reversal would be warranted in cases where the prosecutor, in closing argument: (1) disparaged the insanity defense as a concocted scheme to escape justice; and (2) suggested that the defendant would go free if the jury found him not guilty

by reason of insanity. Both these elements, accompanied by timely objections, are present here.[1]

The prosecutor's "let him go" remark was concededly somewhat ambiguous. The defendant never formally withdrew his consent defense, and the remark could be interpreted as referring to a simple not guilty verdict. Nevertheless, the defendant principally relied on an insanity defense, and the obvious implication was that the defendant would be released if the jury accepted his insanity defense. The comment was thus improper.

The defendant contends that the resulting prejudice could only be cured by an instruction on the procedural consequences of an insanity verdict. We do not agree.

In *State* v. *Smith,* 136 Vt. 520, 526, 396 A.2d 126, 129 (1978), we noted that the decision to charge the jury on the dispositional consequences of a not guilty by reason of insanity verdict was "troubled ground, fraught with both the high probability of error and subject to that kind of adversarial manipulation [that could be] characterized as 'wiley'. . . ." Accordingly, we declared "a return to the more solidly founded rule that the disposition after verdict is for the court, and is not to be charged to the jury." *Id.*

The defendant maintains that *Smith* is distinguishable because the prosecutor's comment created a misapprehension in the jurors' minds about the consequences of an insanity verdict and that, under these circumstances, courts should be required to give the requested instruction. The impropriety here, however, consisted of a single comment. The prosecutor did not repeatedly stress that an insanity verdict would cause defendant to be set

---

[1] In her closing remarks, the Deputy State's Attorney argued at various points:

> Why was Robert Percy going to these doctors, was it because he was sick, was it because he had a pain, or was it because he was trying to find a defense, trying to find something that flies in the face of [the] evidence
>
> . . . .
>
> . . . .
>
> Think back to what Dr. Payson himself said in his desperate search for somebody that could find something to hang a defense handle on . . . .
>
> . . . .
>
> The defense in this case is like amoxicillin. If you can swallow it, find him not guilty. Let him go. Find him not guilty by reason of insanity. Because that's what you have been sworn to do, but I suggest to you there [sic] not a shred of credible, reasonable evidence in this, there's a smoke screen, there's a lot of psycho-babble from five psychiatrists, not two, but five, most of which is unintelligible; . . . .

free or otherwise repeatedly prey on the jury's fears. Compare *Commonwealth* v. *Killelea*, 370 Mass. 638, 648-49, 351 N.E.2d 509, 515 (1976) (defendant entitled to instruction on consequences of a verdict of not guilty by reason of insanity where prosecutor repeatedly stated that defendant would be set free). In short, we do not believe that the prosecutor's comment was so prejudicial that, absent an instruction on the dispositional consequences of an insanity verdict, a new trial is automatically required, particularly where, as here, the effects of the error were mitigated by instruction. See *United States* v. *Jackson*, 542 F.2d 403, 411 (7th Cir. 1976) (passing reference to defendant walking out of courtroom held insufficient to require reversal where trial court instructed jury to disregard question of possible punishment or treatment).

██ Improper remarks in closing argument can in many cases be corrected by curative instructions. See, e.g., *State* v. *Slocum*, 132 Vt. 476, 479-80, 321 A.2d 51, 54 (1974). "[A] strongly worded and prompt admonition is preferred . . . ," *State* v. *Normandy*, 143 Vt. 383, 386, 465 A.2d 1358, 1360 (1983); however, "[t]he circumstances of each case must govern its merits. The final inquiry is whether the defendant's rights were so injuriously affected as to deprive him of a fair trial." *State* v. *Foy*, 144 Vt. 109, 116, 475 A.2d 219, 224 (1984).

Upon proper objection, the trial court in this case specifically instructed the jury that the dispositional consequences of an insanity verdict was not for their consideration.[2] "In the absence of an affirmative showing to the contrary, we assume that the instruction was not ignored by the jury and that the prosecutor's statement was disregarded." *Foy, supra*, 144 Vt. at 117, 475 A.2d at 224. Nevertheless, the court nowhere addressed the defendant's objection to the prosecutor's disparaging remarks about the

---

[2] The trial judge instructed the jury:

I told you [in voir dire], and I reemphasize with you now, that don't let [what might happen in the event of an insanity verdict] enter into your verdict. What happens to Mr. Percy as a result of your verdict, whether it's not guilty, guilty or not guilty by reason of insanity, is not your worry. That's my problem. At that point, I decide what happens next and you should not be in any way influenced in your determination about whether your verdict will cause him to be let go, as they say, or anything else. You should only be concerned with whether he's not guilty to one or both of the offenses, or not guilty by reason of insanity.

defendant's insanity defense as it considered them to be fair comment on the evidence.

In *Billado, supra,* 141 Vt. at 183, 446 A.2d at 783, we noted that a fabrication argument in response to an asserted insanity defense "may or may not be inflammatory depending on the facts of the particular case . . . ." In that case, no one saw the defendant ingest the drug, and the defense psychiatrist's conclusion that he suffered from a drug induced delirium was based entirely on what the defendant told him. *Id.* Since "there was evidence that the defendant may not have been completely truthful with the psychiatrist," we found the State's fabrication argument to be "neither inflammatory nor prejudicial." *Id.*

▮ Notwithstanding the State's contentions to the contrary, this case is clearly distinguishable. In this case, the State stipulated to the fact that the defendant suffered from post traumatic stress syndrome (PTSD). Although the history of the defendant's trauma in Vietnam was entirely self-reported, the defendant's experts based their PTSD diagnosis in large measure on material derived from their interviews with the defendant while he was under the influence of sodium amytal. While the State remained free to argue that the amytal procedure was flawed or that the defendant was not suffering from a PTSD flashback on the night in question, the record here, as in *State* v. *Lapham,* 135 Vt. 393, 407, 377 A.2d 249, 257 (1977), "discloses a studied purpose to arouse the prejudices of the jury by establishing a pattern that raising a legitimate defense of insanity was a mere attempt to escape justice." Such a line of argument can not be characterized "as merely commenting on the evidence." *Id.* It was improper and prejudicial, and it should have been addressed by the trial court upon defendant's timely objection to preserve his right to a fair trial before an impartial jury.

## II.

While we may have been persuaded that the inflammatory nature of the prosecutor's improper remarks was not so prejudicial as to warrant reversal, see *Billado, supra,* 141 Vt. at 183, 446 A.2d at 783, we cannot ignore the impact of this error when it is reviewed in light of the trial court's decision to admit certain irrelevant and prejudicial testimony.

Briefly stated, the defendant claims that the trial court violated the evidentiary rule that *res inter alios acta*—that is, the acts and declarations of strangers to the parties to the action—is incompetent as evidence. Specifically, he objects to testimony, elicited by the prosecutor, that rapists typically claim either consent or amnesia.[3] The defendant maintains that, by making both claims himself, he was improperly associated with rapists generally and that such association impeached his credibility and undermined his insanity defense.

The State argues in response that the defendant (1) waived any claim of error by failing to specify the nature of his objection and by failing to renew his objection; and (2) opened the door to such testimony by introducing evidence on the subject in the first instance. It contends further that the testimony is profile or syndrome evidence which is more probative than prejudicial and admissible in any event under V.R.E. 401.[4]

■ ■ The State's first argument is without merit. The defendant objected to the testimony on grounds of "overbroad generalities, no specific application to this case." This objection was sufficient to preserve the issue of relevance for appeal. See V.R.E. 103(a)(1) (timely objection or motion to strike must appear on the record, "stating the specific ground of objection, if the specific ground was not apparent" from the context). Moreover, V.R.Cr.P. 51 explicitly provides that a "[s]ubsequent objection to the same legal point" is unnecessary. Thus, defendant did not waive his objection by failing to take exception to the testimony of the State's third expert.

■ Nor can it be said that the defendant opened the door to the testimony objected to. It has been stated that:

> [t]he [doctrine of curative admissibility] operates to prevent [one party] from successfully gaining exclusion of inadmissible . . . evidence and then extracting selected pieces of this evidence for his own advantage, without the [opposing party's] being able to place them in their proper context.

---

[3] Three psychiatrists testified that the rapists they interviewed commonly claimed the victim consented. One testified that rapists frequently stated: "I can't remember."

[4] Rule 401 provides, in part:

" 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

*United States* v. *Winston*, 447 F.2d 1236, 1240-41 (D.C. Cir. 1971). Since the purpose of the rule is to allow the other party to explain or meet the evidence which was improperly admitted, it should be applied " 'only to the extent necessary to remove any unfair prejudice which might otherwise have ensued from the original evidence.' " *Id.* at 1240 (quoting *California Insurance Co.* v. *Allen*, 235 F.2d 178, 180 (5th Cir. 1956)); see, e.g., *State* v. *Mosher*, 143 Vt. 197, 206, 465 A.2d 261, 266 (1983) (defendant did not open door to State's use of defendant's assertion of his fifth amendment right to remain silent by conducting a limited voir dire as to when such right was asserted).

In this case, the defendant's expert was asked to explain the dynamics of rape, and he testified briefly as to what men who rape are generally seeking to do. Although the defendant may have thereby waived his right to object to cross-examination on this point, or even to the introduction of an expert with opposing views, he did not waive all right to object to irrelevant and potentially prejudicial evidence of traits and behavior characteristics exhibited by rapists generally.

The State argues in the alternative that the doctrine of *res inter alios acta* is not an ironclad rule admitting of no exceptions and that the testimony was admissible as profile or syndrome evidence.

We agree with the State in part; the evidentiary doctrine at issue here simply expresses the general rule that the acts and declarations of strangers to the parties are either irrelevant or, if relevant, unfairly prejudicial and should be excluded. See V.R.E. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice . . . ."). We also recognize that courts in some jurisdictions have held that under certain circumstances profile or syndrome evidence is admissible. See, e.g., *United States* v. *Burgess*, 691 F.2d 1146, 1151-53 (4th Cir. 1982) (post-traumatic stress disorder syndrome evidence held relevant to defense of insanity); *Smith* v. *State*, 247 Ga. 612, 619, 277 S.E.2d 678, 683 (1981) (battered wife syndrome evidence held relevant to defendant's defense of self-defense); *People* v. *DeJesus*, 71 Ill. App. 3d 235, 236-37, 389 N.E.2d 260, 261 (1979) (battered child syndrome evidence held admissible to rebut defendant's claim of accident). The issue of whether profile or syndrome evidence is admissible in Vermont

courts is not before us, however, as we do not believe that the testimony here can be classified as such.

■ Profile or syndrome evidence is evidence elicited from an expert that a person is a member of a class of persons who share a common physical, emotional, or mental condition. See generally 1 J. Weinstein & M. Berger, Weinstein's Evidence § 401[10], at 88-91 (1985). The expert witness is typically asked to describe the general phenomena and characteristics of the condition at issue, and to give his opinion that the person is suffering from such condition. See, e.g., *United States* v. *Bowers*, 660 F.2d 527, 529 (5th Cir. 1981) (battered child syndrome). In order for this testimony to be admissible, the condition must be one that is generally recognized in the field. See, e.g., *United States* v. *Torniero*, 735 F.2d 725, 731 (2d Cir. 1984) (compulsive gambling disorder held not sufficiently accepted by experts in the field to be admissible); *State* v. *Loebach*, 310 N.W.2d 58, 64 (Minn. 1981) (battering parent profile evidence held inadmissible "until further evidence of the scientific accuracy and reliability of . . . profile diagnos[is] can be established").

■ The testimony at issue here in no way concerns a physical, emotional, or mental condition that could arguably support a profile diagnosis recognized by experts in the field. Three psychiatrists testified that rapists they interviewed commonly claimed consent or amnesia, the obvious inference being that defendant, who made both these arguments, was not to be believed. This testimony did not provide jurors with an explanation as to why most rapists made these claims. It simply casts doubt on the defendant's credibility by suggesting to the jury that all persons charged with rape made these same assertions.

We recognize that expert witnesses are given broad testimonial latitude, see V.R.E. 703; however, no cases have been cited, nor has our research uncovered any, which suggest that this evidence is relevant. In fact, the case law we have examined supports the contrary view.

In *United States* v. *Rangel-Gonzales*, 617 F.2d 529, 531 (9th Cir. 1980), the government claimed that a violation of an alien's right to consult with his consulate was of no consequence because, according to an immigration official, aliens typically do not exercise this right. The court rejected this line of reasoning: "This statement setting forth the conduct of others, in circumstances which are unexplained, would not appear to have any bearing on

what this particular individual would have done in the particular circumstances facing him." *Id.* at 532.

Similarly, in *United States* v. *Eckmann*, 656 F.2d 308 (8th Cir. 1981), the defendant was charged with receiving stolen property. The only issue for the jury was whether the defendant knew that the property was stolen. In this regard, the government introduced evidence at trial of the thief sellers' transactions with other persons who refused to purchase the goods to show that the defendant knew that the property was tainted. *Id.* at 310. The government abandoned its relevancy argument on appeal. *Id.* at 312. Nevertheless, the appellate court felt constrained to add: " '[t]ransactions between third persons are generally inadmissible, unless there is some relationship between them and the defendant which serves to connect him with or make him liable for their conduct.' " *Id.* at 313 (quoting 1 Wharton's Criminal Evidence § 163, at 299-300 (13th ed. 1972)).

We fail to see how explanations or excuses offered by other rapists are relevant to what this particular defendant said in response to the offense charged. Many accused persons profess innocence. That does not mean that the prosecution can introduce evidence to suggest that a defendant's "story" is just like all the others and therefore lacks credibility.

Even if the testimony could be construed as being relevant, see V.R.E. 401, its probative value was substantially outweighed by the danger of unfair prejudice and it should have been excluded. See V.R.E. 403.

██ The testimony stereotyped the defendant as one whose explanations were not to be believed because they were explanations typically offered by psychiatric patients accused of rape. The resulting prejudice is obvious. The jury could well have concluded that this rapist was just like all the other rapists and rejected the defendant's insanity defense not because of the evidence before it but because "he fit the mold."

While the defendant clearly had an opportunity to cure the prejudice resulting from the trial court's erroneous evidentiary decision by way of cross-examination,[5] we cannot ignore the pros-

---

[5] Defense counsel cross-examined one of the State's experts as follows:

Q: [M]any people charged with rape . . . tend to deny it; is that right?

A: They deny that it was—it was rape.

Q: Tell me, Dr. Saran, what do innocent people do when they're charged with rape? Don't they also deny it?

ecutor's insistence in hammering home innuendo in her rebuttal to the defendant's closing argument[6] and the prejudicial impact of these remarks.

## III.

The errors cited cannot be eradicated on the grounds that they were harmless. See *State v. Nash*, 144 Vt. 427, 434, 479 A.2d 757, 761 (1984); V.R.Cr.P. 52. This Court has noted that "[h]armless error analysis requires the reviewing court to inquire if, absent the alleged error, it is clear beyond a reasonable doubt that the jury would have returned a guilty verdict regardless of the error." *State v. Hamlin*, 146 Vt. 97, 106, 499 A.2d 45, 52 (1985) (citing *United States v. Hasting*, 461 U.S. 499, 510-11 (1983)). The burden is cast on the party not prejudiced by the error to show that it was harmless. *Chapman v. California*, 386 U.S. 18, 24 (1967).

The State has not met its burden in this regard. There was no question that the defendant committed the act; the question for determination was whether he was legally insane at the time of the alleged offense. The State acknowledged that the defendant suffered from post-traumatic stress disorders. The State also conceded that the defense presented an impressive army of experts. These experts claimed to have broken through defendant's amnesia with sodium amytal. They testified that their drug induced interviews showed that the defendant was afflicted with a PTSD flashback on the night in question. Although the jury chose to reject their arguments, we cannot say with confidence that its

---

A: Yes.

Q: Is it—are you aware that people are sometimes acquitted of the charge of rape?

A: Yes.

Q: Are you aware that there have been people, women, in this State convicted of falsely accusing men of rape?

A: I'm sure it must have happened.

[6] The prosecutor argued in rebuttal:

What's a cock a bull story is the defendant's version [of what happened] under the tapes. (Taped amytal interviews). Everything was fun, or as Dr. Brodsky puts it, a good time was had by all. And where have you heard that before? From every rapist I've talked to. You ask Dr. Saran, and what have you heard all rapists you had in the State Hospital, in the correctional centers, what do they say? They say a good time was had by all, she loved it, she asked for it, she consented.

verdict was not tainted by prosecutorial misconduct in closing argument or evidence which was improperly admitted and thereafter stressed by the prosecution.

In conclusion, the cumulative effect of these two errors necessitates reversal, and the case must be remanded for a new trial.

*Reversed.*