462 So.2d 102 (1985)
Donald WILLIARD, Appellant,
v.
STATE of Florida, Appellee.
No. 83-2323.
District Court of Appeal of Florida, Second District.
January 16, 1985.
James Marion Moorman, Public Defender, and L.S. Alperstein Asst. Public Defender, Bartow, for appellant.
*103 Jim Smith, Atty. Gen., Tallahassee, and Francis Migliore, Jr., Asst. Atty. Gen., Tampa, for appellee.
PER CURIAM.
Donald Williard appeals a conviction and sentence for DWI-manslaughter. We affirm.
Williard contends initially that the trial court erred by denying his motion for a mistrial after the prosecutor asked the jury during closing argument to return a guilty verdict in order to send a message to the community that Williard's alleged criminal conduct was unacceptable. That closing argument included the following:
MR. HALKITIS: Folks, I know defense counsel brought this up and he said, don't be sympathetic to the victim here. He can't be brought back. I submit to you, I don't want you folks to have any sympathy for [the victim] because sympathy should not play a part in your deliberations. Not only should you not have sympathy for [the victim], you should not have any sympathy for the defendant. You know, it's often been said that your job is the conscience of the community. When you folks speak, the community speaks. We want you, the attorneys, the Judge, everyone in this case wants you folks to speak. We want you to tell the members of this community that the defendant's conduct on April 24 is unacceptable.
MR. FERGUSON: Objection. Improper prosecutorial comment.
THE COURT: Sustained.
MR. HALKITIS: We want you folks 
MR. FERGUSON: Judge, I would also move for a mistrial on that ground.
THE COURT: Denied.
Inflammatory comments of a prosecutor mandate a reversal of a defendant's conviction unless the appellate court can determine from the record that the improper remarks did not prejudice the defendant. See Rahmings v. State, 425 So.2d 1217 (Fla. 2d DCA 1983).
The evidence produced at the trial revealed the following uncontradicted facts: Williard was driving a vehicle which crossed the center line of a highway, striking and killing the victim, who was riding a motorcycle. A toxicologist analyzed a sample of blood taken from Williard shortly after the accident and determined that his blood alcohol level was .178 percent. (Section 322.262(2)(c), Florida Statutes (1981), provides that if an individual has .10 percent by weight of alcohol in his blood, it shall be prima facie evidence that he was under the influence of alcoholic beverages to the extent that his normal faculties were impaired.) Based upon a hypothetical, the medical examiner stated that a person in Williard's position would have had a blood alcohol content of between .152 and .196 percent at the time of the accident. A volunteer with a local fire department and two state troopers, all of whom arrived at the scene shortly after the accident, said that they thought Williard was drunk because he smelled of alcohol, had a flushed face, and had bloodshot eyes. After being read his rights, Williard admitted to one of the troopers that he had drunk eight to ten 10-ounce cups of beer at a picnic.
Although a friend of Williard testified at the trial that he did not feel that Williard was intoxicated at the picnic, and while the fire department volunteer and one of the troopers admitted that Williard's speech was not slurred, and although this trooper thought that Williard's balance appeared fine, the toxicologist explained that a person who records a blood alcohol content of .178 percent can "mask" outward signs of intoxication.
Thus, even though the prosecutor's comments to the jury were improper, we are satisfied beyond a reasonable doubt that the evidence adduced against Williard was so overwhelming that the statements of the prosecutor were harmless error. See Carr v. State, 430 So.2d 978 (Fla. 3d DCA 1983). See also Broomfield v. State, 436 So.2d 435 (Fla. 4th DCA 1983); Williams v. State, 425 So.2d 591 (Fla. 3d DCA 1982); Zamot v. State, 375 So.2d 881 (Fla. 3d DCA 1979).
*104 Williard also argues that the court below erred by sentencing him in excess of the guidelines under which he elected to be sentenced pursuant to Florida Rule of Criminal Procedure 3.701. His guidelines scoresheet placed him in a prison term range of from 7 to 12 years. The trial court sentenced him to a 15-year term of imprisonment.
At the time Williard was sentenced, rule 3.701(d)(11) stated:

Departures from the guideline sentence: Departures from the presumptive sentence should be avoided unless there are clear and convincing reasons to warrant aggravating or mitigating the sentence. Any sentence outside of the guidelines must be accompanied by a written statement delineating the reasons for the departure. Reasons for deviating from the guidelines shall not include factors relating to either instant offense or prior arrests for which convictions have not been obtained.
In setting forth in writing his reasons for departing from the guidelines sentence, the court mentioned the following factor:
This Defendant drove his vehicle and he drove it after consuming a large quantity of alcoholic beverages and crossed into the oncoming lane of traffic, striking the young victim who was operating a motorcycle. Death immediately resulted.
It may be argued, and defendant does, that this factor was not properly a reason for departure from the guidelines because, in the words of rule 3.701(d)(11), it "related to ... [the] instant offense." However, that type of argument has been found to be without merit. See Mischler v. State, 458 So.2d 37 (Fla. 4th DCA 1984). In any event, this factor appears to have been only one of several other clear and convincing reasons for exceeding the guidelines. A departure from the guidelines should not be reversed simply because one of the reasons for the departure was invalid if other valid reasons exist. See Davis v. State, 458 So.2d 42 (Fla. 4th DCA 1984), and Higgs v. State, 455 So.2d 451 (Fla. 5th DCA 1984).
AFFIRMED.
GRIMES, A.C.J., LEHAN, J., and BOARDMAN, EDWARD F., (Ret.) J., concur.