505 So.2d 611 (1987)
Ivonne ROSSO, Appellant,
v.
The STATE of Florida, Appellee.
No. 85-412.
District Court of Appeal of Florida, Third District.
April 14, 1987.
Bennett H. Brummer, Public Defender, and Helen Ann Hauser, Sp. Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Susan Odzer Hugentugler, Asst. Atty. Gen., for appellee.
Before SCHWARTZ, C.J., and HUBBART and JORGENSON, JJ.
PER CURIAM.
Ivonne Rosso was tried before a jury on charges of second-degree murder, attempted first-degree murder, and unlawful possession of a firearm while engaged in a criminal offense. Following her convictions and sentences of imprisonment, she filed this timely appeal. We find merit in her argument that the remarks of the prosecutor so denigrated her lawful insanity defense that a new trial is required.
The incident underlying this prosecution occurred on November 21, 1983, when Rosso shot Lucy Cortina, her housemate and lover, and Liana Menendez, a fifteen-year-old neighbor. Cortina survived the shooting; Menendez did not. At trial, Rosso relied upon an insanity defense and offered the testimony of two psychiatrists who stated that Rosso was suffering from a mental disorder at the time of the offense and could not be criminally culpable under the M'Naghten Rule. In rebuttal, the prosecution presented two psychiatrists who testified that Rosso was sane at all times.
In his opening statement, the prosecutor characterized Rosso's insanity defense as follows:
The defense by which a woman admittedly sane, admittedly before the event and after the event, comes before you and says, "Yes, I shot Lucy Cortina and tried to kill her but I will not be held responsible. And I shot Liana Menendez, and I did kill her but I will not be held responsible *612 by you. And the gun that you see in this Courtroom, yes, that is the gun I held in my hand and I used to commit the crime. But I refuse to be responsible. You cannot hold me responsible."
Rosso's counsel moved for a mistrial on the basis of impermissible comment on Rosso's right to remain silent. The motion was denied by the trial court. The court attempted to remedy any harmful effects from the comment by giving the jury a curative instruction.[1]
During the first portion of his closing argument, the prosecutor again belittled Rosso's insanity defense when he declared, "how dare she [Rosso] come before this Court and say she will not be responsible." The prosecutor's denigration of Rosso's insanity defense reached its zenith in his final rebuttal:
I have 10 minutes to talk to you about the defense of insanity. The defense by which a person comes into Court and says, "I murdered a 15 year old girl and almost murdered my best friend and blew her eye away, and I get to walk. I get to get off. I am not legally guilty. I am not responsible and you cannot hold me responsible."
* * * * * *
Where does that entitle her [Rosso] to come before the Court and say: You cannot hold me responsible for murder? So, she [Rosso] went and got a gun that shoots bullets and kill [sic] people. That is a lot of awful things, and a lot of sad things, but it is not nuts and crazy as the law knows it. Not as the law knows it. And it does not entitle her to come before this court and say to you, "Hands off. I will not be responsible for these horrible crimes I have committed."
At the close of the evidence, the defense renewed its motion for a mistrial based upon the prosecutor's argument in his opening statement. The trial court denied the motion as well as the motion of Rosso's counsel for judgment of acquittal based upon the state's alleged failure to sustain its burden of proof regarding Rosso's sanity. The jury found Rosso guilty as charged.
On appeal, Rosso claims that the trial court erred in (1) denying her motion for mistrial based upon improper prosecutorial comment on Rosso's failure to testify at trial; and (2) denying her motion for judgment of acquittal where the state failed to sustain its burden of showing beyond a reasonable doubt that Rosso was sane at the time of the offense.

I. IMPROPER PROSECUTORIAL COMMENT
Rosso argues on appeal that the prosecutor's opening and closing statements constituted impermissible comments on her failure to testify at trial, thereby compelling the trial court to grant her motion for a mistrial. We agree with Rosso that the trial court erred in denying her motion for a mistrial on the basis of improper prosecutorial comments. These statements were derogatory of both Rosso's failure to testify and her legitimate insanity defense. In State v. Kinchen, 490 So.2d 21 (Fla. 1985), the Florida supreme court reaffirmed the vitality of the test concerning comments on a defendant's failure to testify as previously set forth in David v. State, 369 So.2d 943 (Fla. 1979). The test is whether the prosecutor's remark is "fairly susceptible" of being interpreted by the jury as referring to a criminal defendant's failure to testify. Id. at 944. The prosecutor's references in the instant case to what Rosso was "saying" through her insanity defense is amenable to interpretation as an indirect comment on her failure to testify. Moreover, the comments also pertained to Rosso's insanity *613 defense. While "[a] prosecutorial comment in reference to the defense generally as opposed to the defendant individually cannot be `fairly susceptible' of being interpreted by the jury as referring to the defendant's failure to testify," State v. Sheperd, 479 So.2d 106, 107 (Fla. 1985), the comments here were specifically directed toward Rosso individually and toward her personal insanity defense. In Sheperd the court found no prejudice accruing from the prosecutor's comments that he had difficulty ascertaining the nature of the defense since the comments merely referred to the absence of a defense. We cannot conclude that the comments in this case are similarly devoid of prejudice. In a case as close as this one, with Rosso's insanity established by the defense's two experts and rebutted by the state's two experts, careful scrutiny must be given to the prosecutor's characterizations of Rosso and her lawful defense.
Our assessment of the prosecutor's comments is appropriate because fundamental errors do not require contemporaneous objection to preserve the errors for review on appeal. Despite the lack of repeated objections by Rosso's counsel to the prosecutor's arguments, we may properly consider the impact of these arguments on Rosso's basic right to a fair trial since we find that they amount to fundamental error. The rationale behind the exception waiving objections to fundamental error is that "the improper remarks are of such character that neither rebuke nor retraction may entirely destroy their sinister influence." Ailer v. State, 114 So.2d 348, 351 (Fla. 2d DCA 1959); see Ryan v. State, 457 So.2d 1084 (Fla. 4th DCA 1984) (prosecutor's closing argument emphasizing wealth of defendant and fact that defense counsel was from big city was fundamental error; new trial granted despite lack of multiple objections to argument at trial), rev. denied, 462 So.2d 1108 (Fla. 1985); cf. Groover v. State, 489 So.2d 15 (Fla. 1986) (defendant barred from claiming error on appeal in absence of objection at trial to prosecutor's statements where statements did not amount to fundamental error). In the instant case, Rosso's counsel timely objected to the prosecutor's opening statement and correctly moved for a mistrial. Although Rosso's counsel did not object to the prosecutor's equally egregious closing arguments, we find that the prosecutor's statements were of such magnitude as to achieve fundamental error, thus rendering this error amenable to our review. "In a close case ... where the jury is walking a thin line between a verdict of guilt and innocence, the prosecutor cannot be allowed to push the jury to the side of guilt with improper comments such as these." Ryan, 457 So.2d at 1091.
The state, as the beneficiary of the error, has not sustained its burden of proving beyond a reasonable doubt that the prosecutor's improper statements did not contribute to the guilty verdicts. State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The state's attempt to fulfill its burden through reliance upon the "overwhelming" evidence against Rosso misconstrues the proper standard. In Long v. State, 494 So.2d 213 (Fla. 1986), the Florida supreme court specifically held that the sufficiency or overwhelming nature of the evidence was not the correct standard by which to analyze harmless error. The court instead repeated its pronouncement in DiGuilio that the burden is upon the state to show, beyond a reasonable doubt, that the error did not affect the verdict. Id. at 214.
The state's argument that the evidence against Rosso was "overwhelming" misrepresents the crucial issue at Rosso's trial. There was no dispute at trial that Rosso had committed the acts of shooting Cortina and Menendez. The sole question at trial concerned whether Rosso was legally insane at the time she committed these acts. In its brief, the state correctly concedes that this case presented a battle of expert witnesses. The evidence regarding Rosso's commission of the charged criminal acts was totally distinct from the evidence regarding her insanity. The state may not excuse the prosecutor's misconduct as harmless where the evidence of Rosso's insanity was extremely equivocal and far from "overwhelming."
*614 In determining whether prosecutorial impropriety mandates a new trial, reviewing courts consider the severity of the misconduct, any remedial measures adopted to cure the misconduct, and the likelihood of conviction absent the misconduct. United States v. Modica, 663 F.2d 1173, 1181 (2d Cir.1981), cert. denied, 450 U.S. 989, 102 S.Ct. 2269, 73 L.Ed.2d 1284 (1982). Courts will seldom order a new trial where the evidence of a defendant's guilt is overwhelming, e.g., United States v. Young, 470 U.S. 1, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985); Nicholson v. State, 486 So.2d 688 (Fla. 3d DCA), rev. denied, 500 So.2d 545 (Fla. 1986); Tarpley v. State, 477 So.2d 63 (Fla. 3d DCA 1985); Williard v. State, 462 So.2d 102 (Fla. 2d DCA 1985); Zamot v. State, 375 So.2d 881 (Fla. 3d DCA 1979). Courts are also more likely to excuse prosecutorial excesses in death penalty cases since the situation automatically engenders "florid arguments and dramatic perorations." Collins v. State, 180 So.2d 340, 342 (Fla. 1965); see, e.g., Bertolotti v. State, 476 So.2d 130 (Fla. 1985) (prosecutor's improper arguments during penalty phase not so outrageous as to taint validity of jury's recommendation of death penalty in light of evidence of aggravating factors presented); Breedlove v. State, 413 So.2d 1 (Fla.) (prosecutor's inflammatory reference to defendant as an "animal" not so prejudicial as to require new trial), cert. denied, 459 U.S. 882, 103 S.Ct. 184, 79 L.Ed.2d 149 (1982).
In contrast, improper prosecutorial comments will warrant a new trial where the evidence is very close, e.g., Hill v. State, 477 So.2d 553 (Fla. 1985); Singletary v. State, 483 So.2d 8 (Fla. 2d DCA 1985); Gomez v. State, 415 So.2d 822 (Fla. 3d DCA 1982); McMillian v. State, 409 So.2d 197 (Fla. 3d DCA 1982); where a prosecutor refers to testimony or items not in evidence, e.g., Vaczek v. State, 477 So.2d 1034 (Fla. 5th DCA 1985); Williamson v. State, 459 So.2d 1125 (Fla. 3d DCA 1984); Lane v. State, 459 So.2d 1145 (Fla. 3d DCA 1984); Salazar-Rodriguez v. State, 436 So.2d 269 (Fla. 3d DCA 1983), or where a prosecutor indulges in personal attacks upon an accused, his defense, or his counsel, e.g., Waters v. State, 486 So.2d 614 (Fla. 5th DCA), rev. denied, 494 So.2d 1153 (Fla. 1986); Ryan v. State, 457 So.2d 1084 (Fla. 4th DCA 1984), rev. denied, 462 So.2d 1108 (Fla. 1985); Jackson v. State, 421 So.2d 15 (Fla. 3d DCA 1982). Rosso's case falls within the first and last categories. The prosecutor in his opening statement was plainly discounting Rosso's insanity defense as a subterfuge employed by Rosso to evade justice. This call to prejudice was exacerbated by the prosecutor's intimation in closing argument that Rosso's insanity defense was a mere sham designed to relieve Rosso of all criminal liability. The Florida supreme court has summarized the function of closing argument:
The proper exercise of closing argument is to review the evidence and to explicate those inferences which may reasonably be drawn from the evidence. Conversely, it must not be used to inflame the minds and passions of the jurors so that their verdict reflects an emotional response to the crime or the defendant rather than the logical analysis of the evidence in light of the applicable law.
Bertolotti, 476 So.2d at 134. The closing argument here clearly abridged these principles.
Moreover, a prosecutor's concern "in a criminal prosecution is not that it shall win a case, but that justice shall be done." Modica, 663 F.2d at 1180 (quoting Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314, 1321 (1935)). While a prosecutor "may strike hard blows, he is not at liberty to strike foul ones." Id. The prosecutor in this case clearly failed to honor these precepts. His conduct also violated the obligations imposed by the ABA Standards for Criminal Justice.[2] In *615 short, the prosecutor exceeded all acceptable bounds of advocacy.
Neither Rosso nor the state have emphasized the specific transgression at issue here, the prosecutor's disparagement of a legitimate insanity defense. Neither party has submitted any Florida authority addressing this precise issue, and our own survey has failed to disclose any Florida cases. Other jurisdictions which have confronted the problem of a prosecutor belittling a bona fide insanity defense have concluded that the defendants were entitled to new trials. See, e.g., People v. Wilson, 120 Ill. App.3d 950, 76 Ill.Dec. 427, 458 N.E.2d 1081 (1983) (prosecutor's improper argument that if defendant were found not guilty by reason of insanity he would automatically be released constituted error); State v. Blome, 209 N.J. Super. 227, 507 A.2d 283 (App.Div. 1986) (prosecutor's argument to jury that defendant's defense of insanity and amnesia should not be believed because she refused to take sodium amytal test constituted error because comments went directly to issue of whether defendant was guilty or not guilty by reason of insanity); State v. Percy, 146 Vt. 475, 507 A.2d 955 (1986) (prosecutor's closing argument that defendant would be released if jury accepted his insanity defense and prosecutor's disparagement of insanity defense improper and prejudicial); State v. Lapham, 135 Vt. 393, 377 A.2d 249 (1977) (prosecutor's characterization of insanity defense as a "desperate effort to escape justice" improper and prejudicial). Our analysis of Rosso's claimed error comports with the approach taken by reviewing courts in other jurisdictions. The prejudice resulting from the prosecutor's denigration of Rosso's lawful insanity defense is manifest.

II. JUDGMENT OF ACQUITTAL
We find no merit in Rosso's contention that, because the evidence pertaining to sanity was so close in this case, a judgment of acquittal was in order. A motion for judgment of acquittal should not be granted unless it is apparent that no legally sufficient evidence has been submitted under which a jury could legally find a verdict of guilty. Busch v. State, 466 So.2d 1075 (Fla. 3d DCA 1984); T.J.T. v. State, 460 So.2d 508 (Fla. 3d DCA 1984); Greger v. State, 458 So.2d 858 (Fla. 3d DCA 1984). The evidence adduced by the state in Rosso's case was sufficient to create a question of fact for jury resolution. The state produced two psychiatrists who contradicted the defense experts' diagnosis of Rosso's insanity. The state also presented the testimony of the police officers who responded to the scene of the shootings and the testimony of the arresting officers as well as that of the victim/eyewitness, Cortina. While the evidence relating to Rosso's mental status was extremely close, conflicts in the evidence were properly left for the jury's resolution. Mere conflicts in the evidence do not necessitate a judgment of acquittal. The weight of the evidence and the credibility of the witnesses are for the jury to determine, and conflicts in the evidence do not establish insufficiency of the evidence. Byrd v. State, 297 So.2d 22 (Fla. 1974); Davis v. State, 425 So.2d 654 (Fla. 5th DCA 1983); Wetherington v. State, 263 So.2d 294 (Fla. 3d DCA 1972). Here the trial court specifically amended Florida Standard Jury Instruction 3.04(b) on insanity in order to charge the jury that the state had the burden of proving that Rosso was sane beyond a reasonable doubt, an action subsequently approved by the Florida supreme court in Yohn v. State, 476 So.2d 123 (Fla. 1985).[3] Thus, it was clear to the jury that *616 the state's evidence had to amount to proof of Rosso's sanity beyond a reasonable doubt. Rosso is not entitled to relief on this basis.
For the reasons stated above, we reverse the judgment of conviction and remand this cause for a new trial.
Reversed and remanded for a new trial.
NOTES
[1] The following curative instruction was given by the trial court:

Ladies and gentlemen, again, the Court will ask you to view the opening statement with the following caveat, that an opening statement is only that. That it is a blueprint or a table of contents of what the lawyers feel the evidence is going to show. Nothing that they say is evidence.
The evidence will come in the way of either live testimony from witnesses or any physical exhibits that may be introduced during the course of this trial.
[2] The text of ABA Standards for Criminal Justice (1980) applicable to the prosecutor's argument in the instant case provides in relevant part:

Standard 3-5.8. Argument to the jury
* * * * * *
(c) The prosecutor should not use arguments calculated to inflame the passions or prejudices of the jury.
The policies underlying these prohibitions are set forth in ABA Standards for Criminal Justice, Commentary at 3.88-.89 (1980):
The prosecutor's argument is likely to have significant persuasive force with the jury. Accordingly, the scope of argument must be consistent with the evidence and marked by the fairness that should characterize all of the prosecutor's conduct....
[3] This court has held that the use of Florida Standard Jury Instruction 3.04(b) did not deny a defendant's due process rights although this instruction was later disapproved by the Florida supreme court in Yohn. Snook v. State, 478 So.2d 403 (Fla. 1985), cause dismissed, 487 So.2d 297 (Fla. 1986). Cf. Lentz v. State, 498 So.2d 986 (Fla. 1st DCA 1986) (use of standard jury instruction on insanity which improperly placed burden of proof on defendant was fundamental error).