776 So.2d 347 (2001)
Paul William WILSON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-3578.
District Court of Appeal of Florida, Fifth District.
January 26, 2001.
*348 James B. Gibson, Public Defender, and Marvin F. Clegg, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
W. SHARP, J.
Wilson appeals from his convictions and sentences for two counts of burglary of a dwelling while armed,[1] four counts of grand theft,[2] and failure to appear.[3] Following a jury trial, he received life sentences on the burglary counts, and five years on the other counts, to be served concurrently. The record is not clear, but it appears he was given life sentences for *349 the two burglaries, as both an habitual felony offender under section 775.084(4)(a) and as a Prison Releasee Reoffender. He raises various points on appeal which we find have no merit, but we agree with Wilson that his dual convictions for violation of the different parts of the criminal theft statute are invalid, and that his life sentences should be clarified on remand.
These charges arose out of two burglaries of two separate residences on November 24, 1998, in Sumter County. At about 10:00 a.m., Wilson and another man, Arty Heistand, were noticed by Deputy Prevatt on C.R. 48, in a 1989 Pontiac Firebird turning into a property owned by the Ives. The deputy saw Wilson seated in the front, passenger side of a 1989 Pontiac Firebird. He saw Wilson get out, stand up, and look around.
The deputy continued along C.R. 48, and then turned around and drove back to the residence. He saw the front door had been pried open. He called for backup. He then saw Wilson carrying electronic equipment, and Heistand[4] carrying firearms, out of the house. They dropped the items, jumped into the Firebird (Wilson in the front passenger seat), and a two mile chase ensued. The Firebird crashed into a pole on C.R. 628 and came to a halt. Video games fell out of the car; gloves, and a loaded Luger pistol were found inside on the floor of the front passenger compartment.
Both occupants of the Firebird ran into the woods. A K-9 unit arrived and the dog tracked the suspects. Wilson was found trying to catch a ride an hour or two later. Prevatt identified Wilson as one of the occupants of the Firebird.
The burglary of the Ives' residence followed another burglary at the Jett residence, which had taken place between 7:00 a.m. and 10:00 a.m., the same morning. Both residences are located in the same area. Taken from the Jett residence were properties described by Mr. Jett: a loaded Luger revolver, a Remington shotgun, a VCR, jewelry, a jar of change, and a change purse. Taken from the Ives' residence was electronic equipment, video tapes, and a roll of silver half dollars. The properties taken exceeded $300.00, from each residence.
Items from the Jett residence were found in the crashed Firebird: the Luger gun (found on the passenger floorboard), the Remington shotgun (found next to the vehicle), the change jar and purse ( in the back seat) A roll of coins (presumably from the Ives' residence) was discovered in Wilson's possession when he was booked. No fingerprints tying either Wilson or Heistand to the crimes were found in the two residences, or on the properties taken from them.
Wilson was to have appeared for trial at 8:30 a.m. on July 19, 1999. He did not respond when his name was called. The court revoked his bond and a capias was issued for his arrest. A bailiff in the county court testified he saw Wilson that morning, in the court house, and advised him of the capias. Wilson walked quickly away, took his shirt off, and he and his female companion drove away at a high rate of speed. He did reappear at 10:30 a.m., two hours later. He was arrested on July 22, 1999, and the information was amended to add the charge of failure to appear.
First, Wilson argues the trial court erred in denying his motion for judgment of acquittal at the close of the state's case, and after the close of his case. A judgment of acquittal is proper if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt, where the evidence is circumstantial.[5] If there is direct evidence, the state must present sufficient *350 evidence to legally support a jury's determination of guilt, to defeat such a motion.[6]
In this case there is abundant direct evidence that Wilson committed the Ives' burglary, since he and his companion were virtually caught in the act of carrying off the Ives' personal property from their residence, by the deputy. With regard to the Jett burglary, Wilson's connection to that crime was circumstantial, but the state is only required to introduce competent evidence inconsistent with the defendant's theory of the case. State v. Law, 559 So.2d 187 (Fla.1989); Morris v. State, 727 So.2d 1013, 1014 (Fla. 5th DCA 1999). Wilson's theory was he had not been involved in either of the burglaries but that he had been left on the road, and his only role was to act as a fence. His story was contradicted by the deputy who observed him at one of the burglaries, and by his proximity to the properties in the Firebird, which had just been taken from the Jett residence. The trial court did not err in denying the motion for judgment of acquittal on the burglary counts. See Smith v. State, 742 So.2d 352, 354-55 (Fla. 5th DCA 1999).
We also think the evidence at trial was sufficient to establish the "willfulness" of Wilson's failure to appear. § 843.15, Fla. Stat.; Rahmings v. State, 660 So.2d 1390, 1393, n. 1 (Fla.1995). The fact that he reappeared two hours after fleeing his trial scene merely shows he changed his mind. It does not negate his initial failure to appear.
Second, Wilson argues that two special instructions, to which the defense made a general objection, were erroneous. The first was:
Evidence that the defendant was armed with a dangerous weapon at any time during a criminal endeavor, including while he was in flight after a burglary, is sufficient to prove the elements of armed burglary.
The second was:
In order to find that the defendant was armed with a firearm during the commission of a burglary, it is not necessary for the State to prove the firearm was loaded or was ready to fire. (emphasis supplied)
The court read the following standard jury instructions for burglary, as well:
[A]n act is committed `in the course of committing, if it occurs in the attempt to commit the offense or in flight after the attempt or commission.'

If you find that in the course of committing the burglary, the defendant was armed or armed [himself] within the structure, explosives or a dangerous weapon, you should find [him] guilty burglary while armed. (emphasis supplied).
Wilson urges that the first special instruction improperly comments on "flight" relating to the second as well as the first burglary, citing Fenelon v. State, 594 So.2d 292 (Fla.1992). Fenelon involved a court's instruction on flight as a circumstance the jury could consider in determining guilt. The court cautioned that such an instruction not be given. However, the instruction in this case dealing with flight goes not to the determination of guilt of the offense charged, but rather to when, where and how a defendant had to be armed, in order to prove the enhanced crime of armed burglary. The special instruction on that issue is not materially different from the standard instruction. In fact, that was the sole ground trial counsel raised as an objection at trial:
The instructions as provided by the Court this morning, I believe they are adequately covered in the standard jury instructions and are unnecessary.
Wilson also argues that because there were two burglaries involved in the trial of *351 this case, which had been committed at different times, the instruction on flight, as it pertains to the armed burglary element, should have been limited to the second (Ives) burglary. The jury might have been confused and thought that Wilson's arming himself (possession of the Luger found on the passenger side of the car in which he had been riding), during its pursuit by the deputy, would suffice to convict him of armed robbery in the first burglary (the Jetts). However, Wilson's flight in the Firebird accompanied with a loaded revolver, served not only as an attempt to evade discovery of his participation in the Ives burglary, but the Jett burglary as well, since the evidence showed he and his accomplice had properties in the car taken from the first burglary.
In any event, the error here, if it exists, is harmless, given the evidence produced. In both burglaries, the unrefuted evidence established that firearms were seized in both residences and carried out of the residences. Thus, ipso facto, either Wilson or his accomplice "armed" himself in the structure. The court also gave the standard "principal" instruction[7] that if the defendant is an accomplice, he must be treated as a principal, i.e., as if he had done all of the things the other person did. Constructive or vicarious possession[8] of a firearm is sufficient to support a conviction involving a firearm. Jacobs v. State, 742 So.2d 333 (Fla. 3d DCA 1999); Ellis v. State, 733 So.2d 566 (Fla. 5th DCA 1999); Lewis v. State, 625 So.2d 102 (Fla. 1st DCA 1993).
The second special instruction quoted above does not appear to be necessary in this case. The evidence established that the Luger handgun in the front seat where Wilson had been sitting, was in fact loaded and was very real. The other weapons taken from the residences were also, without dispute, real and capable of firing. The defense made no claim they were not. However to give the instruction in the context of this case does not present reversible error. Kearse v. State, 662 So.2d 677 (Fla.1995); Willis v. State, 583 So.2d 699 (Fla. 1st DCA 1991).
Third, Wilson argues that he should not have been convicted of two counts of grand theft in each of the burglaries. In this case he was charged and convicted of violating section 812.014(1) and (2)(c) for having taken personal properties from each residence, and for violating section 812.014(2)(c) for taking weapons from each residence. Specifically, he was charged and convicted of taking personal property worth $300.00 or more but less than $20,000 (a third degree felony) from the Ives residence and an identical charge and conviction for property taken from the Jetts' residence. In addition he was charged and convicted of taking a firearm from the Ives' residence, and an identical charge and conviction for taking firearms from the Jetts' residence.
Section 812.014 is a general theft statute, which generally proscribes theft of property from a person. § 812.014(1). The statute then goes on to classify the degree of seriousness of the offense, penalty wise, *352 based on the kind of specifically described properties which are stolen, and the value of the property.
(1) A person commits theft if he or she knowingly obtains or uses, or endeavors to obtain or to use, the property of another with intent to, either temporarily or permanently:
(a) Deprive the other person of a right to the property or a benefit from the property.
(b) Appropriate the property to his or her own use or to the use of any person not entitled to the use of the property.
* * *
(2)(c) It is grand theft of the third degree and a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084, if the property stolen is:
1. Valued at $300 or more, but less than $5,000.
2. Valued at $5,000 or more, but less than $10,000.
3. Valued at $10,000 or more, but less than $20,000.
4. A will, codicil, or other testamentary instrument.
5. A firearm.
6. A motor vehicle, except as provided in paragraph (2)(a).
7. Any commercially farmed animal, including any animal of the equine, bovine, or swine class, or other grazing animal, and including aquaculture species raised at a certified aquaculture facility. If the property stolen is aquaculture species raised at a certified aquaculture facility, then a $10,000 fine shall be imposed.
8. Any fire extinguisher.
9. Any amount of citrus fruit consisting of 2,000 or more individual pieces of fruit.
10. Taken from a designated construction site identified by the posting of a sign as provided for in s. 810.09(2)(d).
11. Any stop sign.
Section 775.021 indicates the Legislature's intention that the prosecution charge and convict a person for every separate crime he or she commits in a single offense. However, the statute excepts three categories of cases:
1. Offenses which require identical elements of proof;
2. Offenses which are degrees of the same offenses as provided by statute;
3. Offenses which are lesser offense, the statutory elements of which, are subsumed by the greater offense.
In this case it appears that Wilson was charged and convicted of four grand theft crimes, for essentially two grand thefts. Section 812.014 establishes various degrees of seriousness for thefts of different kinds and value of property. It is clearly an example of a statutory degree crime, and not a separate offense statute for each possible degree delineated in the statute. See Sirmons v. State, 634 So.2d 153 (Fla.1994); Johnson v. State, 597 So.2d 798 (Fla.1992). Thus we agree with Wilson that only one grand theft offense can stand for each burglary.
The state argues that Grappin v. State, 450 So.2d 480 (Fla.1984) would allow to stand multiple convictions for the theft of multiple firearms. But multiple counts of grand theft of firearms are not involved in these burglaries and the state charged Wilson with the generic section 812.014(2)(c), not 812.014(2)(c)5. In any event, we are not certain that Grappin remains controlling law, since section 775.021, quoted above, was revised substantially following the Grappin decision, and the appropriateness of multiple charges in the same prosecution appears to be purely a legislative determination. Whalen v. United States, 445 U.S. 684, 688, 100 S.Ct. 1432, 63 L.Ed.2d 715 (1980).
Finally, Wilson argues that the trial court erred when it failed to announce *353 at sentencing whether it was sentencing him for the two burglaries as a habitual felony offender or as a Prison Releasee Reoffender, or both. In the written documents, he is declared a PRR, and adjudicated as an HFO. The PRR Act does not allow any type of early release or gain time; whereas an HFO is eligible for release after 85% of his time has been served. Adams v. State, 750 So.2d 659 (Fla. 4th DCA 1999). Although Wilson's sentences are life sentences, it is not possible to foresee what the impact of the sentencing labels may be in the future. We conclude, however, that it would be improper for him to have been sentenced under both statutes for the same offense, for the same term, if that is what occurred below, based on the supreme court's recently released opinion. Grant v. State, 770 So.2d 655 (Fla.2000).
Affirm convictions for armed burglary and failure to appear and two counts of grand theft; vacate two convictions and sentences for grand theft; and remand for clarification or resentencing on the burglary offenses.
AFFIRMED in part; REVERSED in part; REMANDED.
HARRIS, J., and ORFINGER, M., Senior Judge, concur.
NOTES
[1] § 810.02(1) and (2)(b), Fla.Stat. (1997).
[2] § 812.014(1) and (2)(c), Fla.Stat. (1997).
[3] § 843.15(1)(a), Fla.Stat. (1997).
[4] Heistand was the driver of the vehicle.
[5] Gordon v. State, 704 So.2d 107 (Fla.1997); Barwick v. State, 660 So.2d 685, 694 (Fla. 1995); Wyatt v. State, 755 So.2d 671 (Fla. 4th DCA 1999).
[6] Hoffman v. State, 708 So.2d 962 (Fla. 5th DCA 1998); Rosso v. State, 505 So.2d 611 (Fla. 3d DCA 1987); Feagans v. State, 487 So.2d 408 (Fla. 3d DCA 1986).
[7] Standard Jury Instruction 3.01 provides:

If the defendant helped another person or persons [commit] [attempt to commit] a crime, the defendant is a principal and must be treated as if [he][she] had done all the things the other person or persons did if
1. the defendant had a conscious intent that the criminal act be done and
2. the defendant did some act or said some word which was intended to and which did incite, cause, encourage, assist or advise the other person or persons to actually [commit] [attempt to commit] the crime.
State v. Dene, 533 So.2d 265 (Fla.1988).
To be a principal, the defendant does not have to be present when the crime is [committed] [or] [attempted].
[8] In Williams v. State, 724 So.2d 1214 (Fla. 4th DCA 1998), the court explained:

Constructive possession exists where an accused does not have physical possession of contraband but (1) knows it is within his presence and (2) has the ability to maintain control over it and (3) knows of the illicit nature of the contraband.