KAHN, J.
 

 Jonathan Clowers appeals his conviction and life sentence for first-degree murder and alleges error on four points: (1) the failure to appoint two experts to evaluate his competency to stand trial; (2) the denial of a motion for judgment of acquittal on the issue of premeditation; (3) improper prosecutorial comment; and (4) the imposition of a minimum mandatory term of life in prison.
 

 PROCEDURAL & FACTUAL BACKGROUND
 

 The events from which this case arose took place in Jacksonville on October 23, 2005, where Clowers was scheduled to drop off his one-year-old son with the baby’s mother, Tiffany Satchel. That afternoon Ms. Satchel drove with her aunt, Alicia Harris, to an apartment belonging to appellant’s brother. Clowers drove from Fort Lauderdale with a friend, Melvin Coleman, to meet them.
 

 Around 8:00 p.m. Ms. Satchel arrived at the apartment to find Clowers already there. Clowers handed the baby to Ms.
 
 *964
 
 Satchel, who moved to secure the child in her van. As she tried to enter the van, though, Clowers grabbed her arm and dragged her toward the center of the parking lot. Ms. Harris, who by this time had gotten out of the van, saw appellant had a gun. After some tense discussion or argument, appellant shot Ms. Satchel three times in the side of the head and threw her to the ground. Clowers then fired a final shot to the back of Ms. Satchel’s head. Appellant ran to his car and drove away with his friend, Coleman.
 

 Coleman recalled that Ms. Satchel and Clowers were arguing in the moments before the shooting; he heard Ms. Satchel say, “Fuck that ... I am going to take your baby and move away.” After the shooting, on the car trip back to Fort Lauderdale, Clowers said to Coleman, “Didn’t I tell you I was going to kill her?”
 

 The State formally charged Clowers with first-degree murder, accomplished by discharge of a firearm resulting in “death or great bodily harm,” in contravention of sections 782.04(l)(a) and 775.087(1) and (2), Floi'ida Statutes. In the months before trial, defense counsel filed successive suggestions of mental incompetence to proceed, see Florida Rule of Criminal Procedure 3.210(b), requesting expressly that the trial court appoint two or more psychiatrists to determine appellant’s mental competence. The court appointed only one expert, Dr. William Meadows, to evaluate appellant. Twice the trial court held hearings to determine appellant’s competency, and twice on the strength of Dr. Meadows’ evaluation found appellant competent to proceed. Clowers filed a third suggestion of mental incompetence, but this time requested only that appellant be examined by “one or more” court-appointed experts. The trial court held a third hearing and again found appellant mentally competent to proceed.
 

 At trial, appellant moved unsuccessfully for judgment of acquittal, arguing the State failed to prove premeditation. In closing argument, defense counsel conceded that appellant had committed the lesser offense of manslaughter. In turn, the prosecutor responded:
 

 [WJhat is the defense trying to argue here? That this is just some domestic situation.... It’s not a big deal. This lady is 27 years old, you know, she happens to get shot four times in the back of the head but it’s just manslaughter. That’s what they want you to believe.
 

 The trial court overruled defense counsel’s objection to the foregoing remarks.
 

 The jury found Clowers guilty as charged. The court sentenced Clowers to life in prison without parole, and, according to the written judgment and sentence, to a minimum mandatory term of life in prison pursuant to section 775.087, Florida Statutes. Appellant moved to correct the sentence,
 
 see
 
 Florida Rule Criminal Procedure 3.800(b), arguing the imposition of a minimum mandatory term of life is not authorized by section 775.087(2)(a)3. The trial court denied the motion.
 

 ANALYSIS
 

 We review the trial court’s interpretation of the Rules of Criminal Procedure de novo.
 
 See Jones v. State,
 
 966 So.2d 319 (Fla.2007). If a trial court, upon motion of defense counsel, has reasonable ground to believe that the defendant is not mentally competent to proceed, the court “shall order the defendant to be examined by no more than 3, nor fewer than 2, experts prior to the date of [a competency] hearing.” Fla. R.Crim. P. 3.210(b).
 

 The State does not question the general rule that a trial judge errs where she fails to appoint at least two competen
 
 *965
 
 cy experts.
 
 See D’Oleo-Valdez v. State,
 
 531 So.2d 1347, 1348 (Fla.1988) (holding there was “no doubt that the trial judge erred in failing to appoint at least two experts”). Similarly, appellant does not dispute that the failure to appoint at least two experts falls short of the level of fundamental error.
 
 See id.
 
 (holding that “failure to appoint a second expert to examine the defendant’s mental competency to stand trial is not fundamental error”). We find the issue unpreserved. Appellant cannot rely on the first two suggestions of mental incompetence to preserve this issue for appellate review. Not only did Clow-ers fail to object at any of the three competency hearings, he ultimately invited the trial court’s error, requesting appointment of just one mental health expert before the final proceeding.
 
 See Mairena v. State,
 
 6 So.3d 80, 86 (Fla. 5th DCA 2009) (holding failure to appoint two experts not preserved for review where defense counsel invited error by requesting only one);
 
 Green v. State,
 
 598 So.2d 313, 313-14 (Fla. 2d DCA 1992) (holding defendant acquiesced in appointment of single competency expert where, rather than object to appointment of only one, defense counsel informed trial judge counsel had report from single appointed expert indicating defendant was competent). Having acquiesced in or invited the error of which he now complains, appellant states no grounds for relief on this issue. Beyond mere non-preservation, appellant actually waived the point.
 

 We review de novo a ruling on a motion for judgmental of acquittal.
 
 See Pagan v. State,
 
 830 So.2d 792 (Fla.2002). Clowers contends on appeal that the State failed to refute the hypothesis that he killed Ms. Satchel in the heat of passion, pointing to the argument in which Ms. Satchel apparently threatened to move away with his child.
 

 Premeditation — “a fully formed conscious purpose to kill” — “may be formed a moment before the act, but must also exist for a sufficient length of time to permit reflection as to the nature of the act to be committed and the probable result of that act.”
 
 Bigham v. State,
 
 995 So.2d 207, 212 (Fla.2008). The victim’s verbal provocation notwithstanding, appellant cannot gloss over the trappings of premeditation as are reflected in his conduct. With no hint of physical provocation, Clowers shot his victim repeatedly, and in the back of the head, the final shot coming as Ms. Satchel lay on the ground.
 

 Also, Ms. Harris testified that appellant had to retrieve the gun from his car, and Coleman confirmed that Clowers said on the way home, “Didn’t I tell you I was going to kill her?” That Coleman did not attest to a similar proclamation made before the shooting does not preclude the inference that appellant had an opportunity to, and did in fact, form a conscious purpose to kill before doing so. Instead, his post facto statement affirmed his earlier intent. Viewing the evidence, as we must, in a light most favorable to the State,
 
 see Woods v. State,
 
 733 So.2d 980, 985 (Fla.1999), we conclude that the record discloses sufficient evidence from which the jury could infer premeditated design to the exclusion of all reasonable hypotheses of innocence.
 

 Control of a prosecutor’s comments falls within trial court discretion, the exercise of which we will not disturb absent a clear showing of abuse.
 
 See Pacifico v. State,
 
 642 So.2d 1178, 1182 (Fla. 1st DCA 1994). Clowers posits that the prosecution, by questioning defense counsel’s claim that Clowers was guilty only of manslaughter, denigrated his theory of defense, in contravention of the dictate that closing remarks are not to be used to ridicule the defendant or his theory of
 
 *966
 
 innocence.
 
 See Rosso v. State,
 
 505 So.2d 611 (Fla. 3d DCA 1987). A contextual examination of the prosecution’s remarks, however, reveals that the State hewed closely to the facts in evidence, asking the jury to draw its own inferences from the circumstances surrounding Ms. Satchel’s murder. Given the standard of review, we do not find this to be anything other than a logical analysis of the evidence in light of the applicable law.
 

 Legality of a sentence raises a question of law, subject to de novo review.
 
 See Grosso v. State,
 
 2 So.3d 362, 364 (Fla. 4th DCA 2008). Clowers denies the trial court’s authority under section 775.087(2)(a)3., Florida Statutes, to impose a minimum mandatory term of life in prison, even upon a jury finding the defendant discharged a firearm and thereby caused death or great bodily harm. Section 775.087(2)(a), the “10-20-life” law, is an enhancement provision, under which a criminal sentence may be heightened if the perpetrator has carried or used a weapon or firearm in the commission of a felony.
 
 See
 
 § 27.366(1), Fla. Stat. (providing, “[i]t is the intent of the Legislature that convicted criminal offenders who meet the criteria in [sections] 775.087(2) and (3) be sentenced to the minimum mandatory prison terms provided herein”). Section 775.087(2)(a)3. provides for a mandatory life sentence where the criminal has been convicted of:
 

 [A] felony or an attempt to commit a felony listed in sub-subparagraphs (a)l.a.-q .... and during the course of the commission of the felony such person discharged a ‘firearm’ or ‘destructive device’ ... and, as the result of the discharge, death or great bodily harm was inflicted upon any person....
 

 Appellant, of course, stood convicted of a capital felony under section 782.04(l)(a), the only penalty for which, short of death, is a minimum mandatory term of life in prison.
 
 See
 
 § 775.082(1), Fla. Stat. (providing that person convicted of capital felony “shall be punished by life imprisonment and shall be ineligible for parole”). Although one might question why the State charged appellant under section 775.087, we can certainly conceive that the State wished to preserve the right to seek a 10-20-life sentence enhancement in the event of conviction of a lesser-included offense, such as manslaughter. Whatever the reason, any citation to section 775.087(2)(a)3. does not affect the legality of the sentence for first-degree murder. Here, appellant was convicted and sentenced solely for a capital felony. Thus
 
 Hoover v. State,
 
 877 So.2d 751 (Fla. 1st DCA 2004), relied on by appellant, is inapposite.
 
 See id.
 
 at 752 (reversing mandatory life sentences for kidnapping, robbery, and carjacking, but affirming mandatory minimum life sentence for first-degree murder).
 

 AFFIRMED.
 

 BENTON and ROBERTS, JJ., concur.